Nelson Edgar WOOD, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S00–8608–CR–713.

Supreme Court of Indiana.

Sept. 22, 1987.

Barbara W. Roberts, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant on several charges in two different causes. In Cause Number 23637, appellant was found guilty on four charges of Criminal Deviate Conduct, a Class A felony, Robbery, a Class A felony and Burglary, a Class A felony. He received a sentence of five fifty (50) year terms to run concurrently and one twenty (20) year term to run consecutively. In Cause Number 23653, appellant was found guilty of Rape, a Class A felony, and of three counts of Criminal Deviate Conduct. He received four fifty (50) year terms to be served concurrently to each other and consecutively to the sentences imposed in Cause Number 23637.

The facts are: On July 15, 1983, the victims had returned from vacation and were spending the night at the home of victims P.V. and L.V. Asleep in the living room were P.V., L.V., their two small sons and L.V.'s brother and sister-in-law, R.V. and A.V. At approximately 2:00 a.m., P.V. was awakened by the sound of an upstairs window rattling. She then heard footsteps coming down the stairway and saw appellant holding a knife. She yelled, "[t]here's someone in the house," which awakened the others. Appellant said he wanted money and threatened that if they did not cooperate with him, they would be hurt.

Appellant removed the sheets from the children's beds and cut them into strips and ordered P.V. to tie up the other adults. He then cut off A.V.'s clothes and began touching her genital area. He did the same to P.V. Throughout the encounter, appellant slapped the victims with the knife blade and threatened to decapitate the children if they failed to cooperate with his demands.

Appellant then found a tennis racket and shoved the handle into P.V.'s vagina. He then forced P.V. and A.V. to engage in oral sex with each other. He inserted the knife handle into A.V.'s vagina and forced A.V. to urinate in P.V.'s mouth. R.V. and L.V. were tied up and lying facedown on the floor. When R.V. or L.V. voiced objections to his demands, appellant struck them on the back rib cage with a tennis racket.

Next, appellant used the knife to cut a long section of P.V.'s hair from her head. He shoved the hair into A.V.'s mouth and ordered her to eat it. He then made several X-shaped cuts in P.V.'s shoulders with the knife. He scraped the blood from P.V.'s wounds with the knife and dripped it onto A.V.'s body. Appellant then forced P.V. to have oral sex with him.

Appellant took P.V.'s three-year-old son on his lap and held a knife to his stomach and ordered P.V. to stab her husband, L.V., in the heart with a second knife, or he would kill her son. After P.V. refused to do this, appellant forced A.V. to sit above the face of her husband, R.V., and defecate into his mouth. After A.V. was unable to do this, appellant forced P.V. to fill a sitz bath with water and give A.V. an enema. Appellant continuously threatened that he would harm the children if they did not cooperate, and poked the victims with the knife and made small cuts on their bodies.

Next appellant took a pop bottle and rammed it into A.V.'s vagina several times, then did the same to P.V. Intermittently he destroyed certain items in the home, such as a clock and telephone, by smashing them.

After A.V. had a bowel movement, appellant smeared some of the feces onto R.V. with his knife blade, then put some into R.V.'s mouth by hand. He then smeared it on A.V.'s face and body.

As dawn broke, appellant took the jewelry and wallets belonging to the victims and ordered A.V. to drive him in one of their cars. They drove for several miles to a gravel pit. Appellant ordered A.V. to drive through a chain stretched across the drive. The chain became entangled in the wheels of the car and appellant got out to remove it. While appellant was out of the car, A.V. accelerated and appellant grabbed onto the passenger door. A.V. accelerated to about seventy-five miles per hour and swerved the car causing appellant to fall.

A.V. then went to the police and informed them of the incident. The other three victims also had called the police after appellant and A.V. had left the home. All of the victims were taken to the hospital.

A.V. and P.V. were shown a photographic lineup containing appellant's picture. They made an immediate and positive identification of him. The victims testified at trial and all gave the same account of the incident in specific detail.

Appellant first argues that he had shown by a preponderance of the evidence that he was insane at the time of the crime, thus the verdict should not stand. Appellant claims there was substantial evidence that he was suffering from a mental disease and could not conform his conduct to the requirements of the law.

■ In an insanity defense, the decision will be disturbed only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion. *Turner v. State* (1981), Ind., 428 N.E.2d 1244.

■ Three psychiatrists examined appellant and gave testimony at trial regarding their conclusions. One doctor stated his belief that appellant suffered some mental disease or defect at the time of the incident, but that he was still able to distinguish conduct as right or wrong, and he was able to conform his behavior to the

requirements of the law in spite of his mental defect.

The second doctor testified that appellant was not suffering from a mental disease or defect at the time of the crime. He believed appellant knew what he was doing, was able to appreciate the wrongfulness of his conduct, and was able to conform his conduct to the requirements of the law.

The third doctor gave testimony that he believed appellant was not suffering from a mental disease or defect, he was able to appreciate the wrongfulness of his conduct at the time of the assault and was able to conform his conduct to the requirements of the law.

There was substantial evidence from which the jury could find that appellant was not insane at the time of the offense.

■ Appellant also argues that the trial court erred by permitting copies of certain instructions to be sent to the jury room. In his view, the procedure of sending written instructions to the jury room was irregular and the instructions themselves caused confusion. Appellant made no objection to the procedure of tendering the instructions nor to their contents when they were tendered. Failure to object to an alleged error results in waiver of that issue for purposes of appeal. *McCraney v. State* (1981), Ind., 425 N.E.2d 151.

■ Even had an objection been made, it would have been to no avail. It is not error to send instructions to the jury room if they have first been read in open court. *Maxey v. State* (1985), Ind., 481 N.E.2d 1307; *Jameison v. State* (1978), 268 Ind. 599, 377 N.E.2d 404.

Appellant also argues that the trial court erred in communicating with the jury in his absence. While the jury was deliberating, they discovered that the final instructions referred to some charges which were dropped during proceedings. They asked the court for the verdict forms for those charges. The court responded that they had the verdict forms for all of the charges they should consider.

■ Defense counsel was present during this communication and made no objection.

Therefore, the issue was waived for purposes of appeal. *McCraney, supra.*

■ Additionally, we are satisfied that no harm or prejudice resulted from the communication. The trial court's simple statement merely clarified the instructions for the jury. Appellant was not prejudiced by the communication. *Alexander v. State* (1983), Ind., 449 N.E.2d 1068.

Appellant also argues that he was denied a fair trial because the jury was biased. Appellant gives the following reasons in support of his argument: certain jurors were exposed to news broadcasts regarding the assault and one said she was unsure whether she could be impartial; other jurors had relatives who were policemen; one juror had experienced a breaking and entering in his home; and another juror knew one of the police witnesses.

■ Appellant made no objection to the jury panel, so this issue was waived for purposes of appeal. *McCraney, supra.*

Appellant contends the trial court erred in allowing a photographic lineup containing his picture to be admitted into evidence. He maintains that because identity was never an issue, the "mug shots" were prejudicial because they tended to imply that he has a criminal record.

■ "Mug shots" are prejudicial when they show the frontal and profile views with information regarding prior arrests. *Hunter v. State* (1986), Ind., 492 N.E.2d 1067. However, appellant has waived this issue for two reasons. First, no objection was made at trial to the admission of the photographic array. *McCraney, supra.* Also, appellant has failed to include the photographic lineup in the record for our review. *Smith v. State* (1981), Ind., 422 N.E.2d 1179. Therefore, we are unable to review this issue.

Appellant next argues that the trial court erred in admitting the expert witness's testimony which implied that appellant had committed previous offenses.

A psychiatrist testified that he had examined appellant on two other occasions for two other judges. He further stated that

appellant was in a "light" mood when he was examined, which the doctor felt was inappropriate considering the fact that he was being examined because of the charges against him. The doctor then explained that appellant's mood at that time contrasted with his withdrawn personality during the examination of his current charges. No further details were given about his prior offenses.

■■■ Once a defendant offers an insanity plea, all relevant evidence is deemed admissible. Even evidence which is otherwise incompetent or immaterial may be admitted to show the mental state of the defendant. *Twomey v. State* (1971), 256 Ind. 128, 267 N.E.2d 176.

■■■ Because appellant's insanity plea opened the door to all evidence relating to himself and his environment, the doctor's testimony was correctly admitted. *Id.*

Appellant claims his counsel was ineffective. To support his argument, appellant cites eight instances of ineffective counsel.

On appeal there is a presumption that counsel was competent. This presumption may be overcome only by a showing of strong evidence that counsel so failed to provide the defendant with adequate legal representation that the trial resulted in a mockery of justice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Duncan v. State* (1980), 272 Ind. 614, 400 N.E.2d 1112.

Appellant alleges the following:

1. His counsel failed to request a change of venue where there was pretrial publicity.

2. His counsel made no objections to sending the instructions into the jury room.

3. His counsel failed to remove a juror from the panel when the juror remembered the publicity and was unsure as to her impartiality.

4. His counsel spent only a limited amount of time with him.

5. His counsel failed to cross-examine State's witnesses.

6. His counsel made no objections to a doctor's mention of appellant's prior offenses.

7. His counsel failed to bring forth any differences in the testimony of the three doctors.

8. His counsel failed to object to admission of a photographic lineup.

■■■ We note the first three allegations of incompetency can be categorized as trial strategy thus we will decline to consider them as examples of ineffective counsel.

Appellant states that his counsel had only limited meetings with him. He estimates that his counsel visited him on eight occasions for a total of forty-five minutes.

■■■ Minimal consultation does not necessarily show incompetent representation. *Wynn v. State* (1976), 265 Ind. 133, 352 N.E.2d 493. Appellant must show that the consultation was so perfunctory that evidence capable of changing the result at trial was not presented. *Jackson v. State* (1975), 264 Ind. 54, 339 N.E.2d 557.

Appellant contends that because meetings with his counsel were so limited, his counsel was denied the opportunity to seek information from him regarding prior hospitalization and possible expert witnesses.

Testimony was given at trial establishing that appellant had been hospitalized for his mental condition, once for over a year-long period, that he had been on medication for mental illness, and that he may have suffered from a schizophrenic-type disorder. Because evidence of appellant's mental health history was brought forth at trial, we cannot find that additional evidence regarding these matters would have been capable of changing the result of the trial.

Appellant simply states that his counsel failed to cross-examine most of the State's witnesses. He brings forth no evidence establishing why his counsel's performance was deficient by choosing to not cross-exam the witnesses, nor how he was prejudiced. Therefore, we cannot find that his counsel's performance was inadequate on this issue.

Appellant also complains that his counsel failed to object to an expert witness's comment indicating that he had committed a previous offense. As was stated above, this testimony was proper so no incompetency can be shown by the failure to object to it.

 Appellant believes his counsel was incompetent because of his failure to bring forth any differences in the testimony of the three doctors. This objection is based upon the fact that one doctor believed appellant to have a mental disease or defect and that it would have been difficult in some circumstances for appellant to conform his behavior to the requirements of the law. This fact is of minimal importance because all of the doctors ultimately concluded that appellant was not insane at the time of the incident. Therefore, appellant was not prejudiced.

Appellant complains that his counsel failed to object to the admission of a photographic lineup. However, because of the absence of the photographic lineup in this record, we are unable to determine whether or not a valid objection was available to trial counsel.

From these facts we cannot find that appellant has overcome the presumption that he was represented competently.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.