**Michael W. MULLINS, Ildege J. Dorion, Mark C. Pridemore, John W. Sositko, Appellants,**

v.

**STATE of Indiana, Appellee.**

No. 07S00–8702–CR–245.

Supreme Court of Indiana.

May 24, 1988.

Ronald K. Rychener, Brookville, James Andrew Rader, Cincinnati, Ohio, of counsel, for appellants.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellants as follows:

Mullins was found guilty of Conspiracy to Commit Battery by Means of a Deadly Weapon, a Class C felony, for which he received a sentence of five (5) years, Voluntary Manslaughter, a Class B felony, for which he received a sentence of eight (8) years, the sentences to run concurrently.

Dorion was found guilty of Conspiracy to Commit Battery by Means of a Deadly Weapon, a Class C felony, for which he received a sentence of five (5) years, and Voluntary Manslaughter, a Class B felony, for which he received a sentence of ten (10) years, the sentences to run concurrently.

Pridemore was found guilty of Conspiracy to Commit Battery by Means of a Deadly Weapon, a Class C felony, for which he received a sentence of five (5) years, and Voluntary Manslaughter, a Class B felony, for which he received a sentence of twelve (12) years, the sentences to run concurrently.

Sositko was found guilty of Conspiracy to Commit Battery by means of a Deadly Weapon, a Class C felony, for which he received a sentence of five (5) years, and Voluntary Manslaughter, a Class B felony, for which he received a sentence of eight (8) years, the sentences to run concurrently.

The facts are: During 1985, members of the Blues Club, a social club in New Albany, Indiana, had been experiencing difficulties with members of the Iron Horsemen Motorcycle Club also located in New Albany. Disagreements between members had erupted into fights. All appellants are members of the Iron Horsemen Motorcycle Club.

Jerry Overstreet, a member of the Blues, testified that on the night of August 17, 1985 he was sitting in the doorway of the Blues clubhouse. Steve Barth and Jim Bo Cox, also members of the club, were standing outside of the clubhouse talking. Overstreet heard Barth yell "here they come," and Barth saw several men walking toward the clubhouse. They were wearing black shirts and masks over their faces and were pointing guns straight out in front of them. They yelled "hold it ... mother fucker ... or you're dead." As Barth was fleeing toward the clubhouse, he saw one man fire his gun. Overstreet, Barth, and other Blues members obtained weapons and began shooting at the men. Cox was shot several times and subsequently died from a gunshot wound to his head.

When police arrived at the clubhouse, they followed a trail of blood to a residence where they found a sawed-off shotgun leaning against the house. Inside the house, police found Sositko and took him into custody. Spent shotgun shells found at the scene of the shooting were later determined to have been fired from this gun. Police located the other three appellants in the hospital where they were being treated for gunshot wounds.

William Reynolds testified that he looked out the window of his workplace on the evening of August 17, 1985 and saw several men come out of a van parked a short distance from the Blues clubhouse. He saw one man carrying a sawed-off shotgun and another holding a stick or baseball bat. Shortly thereafter he heard gunfire. He

watched the men retreat to the van and a nearby car, and one man appeared to be injured.

Appellants contend they were denied their Sixth Amendment right to effective assistance of counsel due to their defense counsel's conflict of interest. They believe that a conflict of interest arose due to counsel's joint representation of them.

Before their trial commenced, the trial judge stated that he assumed there was no question about a conflict in the fact that their defense counsel represented each and every appellant, and that if there were any question, they were to address it to him at that time. The record reflects that each appellant responded that he was satisfied with the fact that defense counsel was representing all of them. The judge then asked, "[N]obody is raising any question that he may have a conflict because he is representing you all? That is your desire that he continue this trial as sole Attorney for you? ... Well let the record so reflect."

Though no objection was made at trial, appellants now assert the trial court's inquiry was inadequate and that there is nothing in the record which indicates that appellants made a knowing and intelligent waiver of the issue concerning a possible conflict of interest.

Mere joint representation does not per se violate the right to counsel or establish ineffective representation. *Carpenter v. State* (1986), Ind., 501 N.E.2d 1067. In order to establish a violation of the Sixth Amendment, a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affects his lawyer's performance. *Aubrey v. State* (1985), Ind., 478 N.E.2d 70.

Appellants generally state they were barred from exonerating themselves or implicating any other appellant due to the conflict of interest, and that their defense counsel's ability to cross-examine was limited. However, no appellant states, nor does the record reflect, that any one of them desired to pursue their defense independently or make a statement to exculpate themselves or inculpate anyone else. Actual prejudice, and not a mere possibility of a conflict of interest, must be established to show inadequate representation. *Averhart v. State* (1984), Ind., 470 N.E.2d 666. Because appellants have not shown that a conflict of interest actually affected their attorney's performance, we find no error. *Id.*

In a related argument, appellants assert that there existed a conflict of interest because two witnesses called by the State also were represented by their defense counsel.

Richard Lockhart, president of the local chapter of the Iron Horsemen Motorcycle Club, testified that he hired and paid for the attorney who defended appellants. Lockhart was called as a State's witness, and after answering a few preliminary questions, he pleaded the Fifth Amendment. The State moved to grant Lockhart immunity and during the discussion about the motion, defense counsel defended Lockhart's position, requesting his full immunity, and said that if the extent of his immunity was not determined by the trial court, he would instruct Lockhart not to testify. Lockhart was granted use immunity and he proceeded to testify.

David Bergeron, a member of the Iron Horsemen, also was called as a State's witness, and he, too, pleaded the Fifth Amendment. Defense counsel represented Bergeron's interest by insisting that he receive full immunity, and the court granted use immunity before Bergeron continued to testify. Appellants argue that their attorney's representation of Lockhart and Bergeron produced a conflict of interest and their defense counsel was not free to implicate Bergeron or Lockhart because they were his own clients.

Again, appellants failed to make an objection at trial, thus they must show that their counsel actively represented conflicting interests and the conflict adversely affected their counsel's performance. *Aubrey, supra.*

Bergeron testified that he was at the scene of the shooting but said they

were invited to a party at the Blues clubhouse. He denied seeing appellants carry any weapons and said that they were fired upon as they approached the Blues clubhouse. At that point, the State declared Bergeron to be a hostile witness.

Lockhart was not present at the scene of the incident. He testified that appellants told him they had been invited to the clubhouse and upon arrival, they were ambushed and Cox opened fire upon them first.

At first glance, defense counsel's representation of these two State's witnesses appears to conflict with appellants' interest. However, the witnesses' testimony corroborated appellants' version of the shooting. We fail to see how their testimony conflicted with appellants' position or how they were harmed thereby. Considering these facts, we cannot find that appellants have established that their counsel represented conflicting interests and that the conflict adversely affected his performance. Therefore, we find no reversible error. *Cowell v. State* (1981), Ind., 416 N.E. 2d 839.

■ Appellants argue the trial court committed reversible error by communicating with the jury outside of their presence. In the midst of jury deliberations, the jury foreman requested that the instructions be reread. Appellants argue that three of them were not present in the courtroom when the instructions were reread, and such error mandates a reversal of their convictions.

Defense counsel was present during the communication to the jury and no objection was made. Therefore, the issue was waived for purposes of appeal. *Wood v. State* (1987), Ind., 512 N.E.2d 1094.

■ Further, we are satisfied that no harm or prejudice resulted from the communication. The trial court simply informed the jury that it was necessary to reread the instructions in their entirety, and the instructions were given in compliance with the law. The statements were innocuous and appellants have shown no prejudice. *Id.*

■ Appellants argue their right to a fair trial was prejudiced by certain statements during final argument. The prosecutor told the jury that the court was about to instruct them and give them verdict forms. Then he asked the court if he could explain the verdict forms to the jury. The court responded that he could, and the prosecutor proceeded to explain the content of the forms to the jury.

Appellants do not dispute that the explanation by the prosecutor was correct. They believe, however, that by allowing the prosecutor to give such instructions to the jury, the trial court improperly imbued him with a degree of credibility which creates an implication that everything the prosecutor said was to be trusted. They contend that the prejudicial impact of this error should result in the reversal of their convictions.

Appellants have waived this issue for two reasons. First, they made no objection at trial to the prosecutor's explanation of the verdict forms. Failure to make a timely objection results in waiver of the issue. *Id.*

Also, appellants fail to cite any authority in support of their contention that they were prejudiced by the prosecutor's remarks. Therefore, the alleged error has been waived. Ind.R.App.P. 8.3(A)(7); *Johnson v. State* (1985), Ind., 472 N.E.2d 892.

Appellants argue they were prejudiced by the admission of irrelevant evidence. In their brief, they cite several instances in which, they contend, the prosecutor's question or comment was made for the purpose of emphasizing the fact that they were members of a motorcycle gang.

■ They first complain of the prosecutor's question in which he asked a witness the nicknames of the Iron Horsemen members. Appellants objected on the ground of irrelevancy, their objection was sustained and the line of questioning stopped. Appellants' sustained objection cannot serve as an allegation of error on appeal. *Reames v. State* (1986), Ind., 497 N.E.2d 559.

Appellants also complain of the prosecutor's questions in which he asked the definition of a "one-percenter" and asked a club member whether he had a "one-percenter" tattoo on his arm. Appellants failed to make any objection at trial to these comments. Failure to object at trial constitutes waiver of these alleged errors. *Wood, supra* at 1097. Also, defense counsel himself asked a witness the definition of a "one-percenter." We find no error.

Appellants also argue that the admission of a photograph of one appellant wearing an Iron Horsemen jacket was erroneous and prejudicial. They objected on the ground of irrelevancy and the trial court allowed its admission for a limited purpose.

The photograph was admitted into evidence for a limited purpose because a witness, who was present at the scene of the shooting, used the photograph to identify the appellant in the picture. The court told the jury that the photograph was admitted for a limited purpose and it would be unfair to allow the witness to testify about the photograph without the jury being able to see it, and the photograph was admitted.

The trial court has wide latitude in ruling on the admissibility of evidence and in determining its relevancy. *Smith v. State* (1984), Ind., 465 N.E.2d 702. Any fact which legitimately tends to connect a defendant with a crime is admissible when a reasonable inference may be deduced from such evidence. *Harris v. State* (1985), Ind., 480 N.E.2d 932.

We find no error in the admission of the photograph for the purpose of identifying its subject. Also, considering that the jury knew that the subject of the photograph belonged to a motorcycle club and the photograph merely depicted him in his club jacket, we fail to see how appellants were prejudiced.

Appellants also argue that the testimony of a police officer was irrelevant and should not have been admitted. He was asked by the prosecutor to give the definition of a "one-percenter." Appellants objected on the ground that the question was irrelevant. The judge stated that the subject previously had been discussed by a witness with no objection by appellants, so he allowed the officer to explain that the term referred to gang members who associate with the top four clubs in the country, one being Hell's Angels.

This Court has upheld convictions against the claimed erroneous admission of improper evidence where evidence of the same probative effect previously had been admitted without objection. *Simmons v. State* (1987), Ind., 506 N.E.2d 25.

Also, it was undisputed that appellants were members of a motorcycle gang. Though the testimony may have been irrelevant, its admission was not prejudicial to appellants. We find no reversible error. *Harris, supra.*

Appellants argue that the evidence is insufficient to support their convictions. They assert they went to the clubhouse because they were invited by the Blues to attend a party there and that there exists no evidence to establish they were armed. They conclude that the record is devoid of evidence which shows they had an agreement to commit a crime.

This Court will not reweigh the evidence or judge the credibility of the witnesses. *Haynes v. State* (1985), Ind., 479 N.E.2d 572. If part of the evidence standing alone would justify a guilty verdict, we cannot set that verdict aside because of evidence to the contrary. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068.

A conviction for conspiracy may rest on circumstantial evidence alone. The agreement, as well as the *mens rea,* may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act. *Isom v. State* (1986), Ind., 501 N.E.2d 1074. We find the evidence is sufficient to support their convictions.

Appellants finally argue that five guns were erroneously admitted into evidence because no foundation was laid and the exhibits were irrelevant. They contend that no evidence exists connecting them

with certain guns found in the weeds behind the Blues clubhouse, inside the clubhouse, and in the street. They believe that in closing argument the prosecutor knowingly deceived the court by implying that the guns belonged to appellants.

No objections were made by appellants to the admission of the evidence or to the prosecutor's comments during his final argument. Therefore, no issue has been preserved for appellate review. *Estep v. State* (1985), Ind., 486 N.E.2d 492; *Gambill v. State* (1985), Ind., 479 N.E.2d 523.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.