**David SHANE Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 68S00–9710–CR–526.

Supreme Court of Indiana.

Sept. 22, 1999.

Jack Quirk, Muncie, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SELBY, J.

Defendant David Shane ("Shane" or "Defendant") was convicted in the Randolph Superior Court of murder, conspiracy to commit murder, feticide, and assisting a criminal. He was sentenced to sixty years for murder with four years suspended, to run concurrently to a fifty year conspiracy sentence, and eight years for feticide, to run consecutively to the murder charge and concurrently to a four year sentence for assisting a criminal. Shane brings three claims in this appeal. He argues that 1) his convictions are unsupported by sufficient evidence, 2) the trial court erred in admitting two items of evidence, and 3) Shane's pre-trial jail time was improperly credited against his sentence.[1] We reject all claims and affirm all convictions.

*Factual and Procedural Background*

On the morning of July 28, 1994, a neighbor of Nicole Koontz found her dead in the living room of her trailer. Koontz had been dead for several hours from a gunshot wound to the head, inflicted at close range. She had been shot three times through a pillow with a .25 caliber gun. As a result of her death, her 29 week old fetus also died. Two bullet casings and one live round of ammunition from a .25 caliber handgun were found at the scene.

A police investigation ensued. Robert Hicks, the boyfriend of Koontz, and his best friend and business partner, David Shane, were both questioned during the course of this investigation. During the initial interviews, Hicks and Shane recounted almost identical stories. Shane and Hicks had worked until 2:00 p.m. at a painting job. They returned to Shane's home and worked on the yard. They drank beer, smoked pot, took showers, and eventually left home to go to two bars. They left the second bar at around 1:00 a.m., went to Taco Bell and returned home around 1:30 a.m., at which point they ate and went to bed. The next morning, they went to Hardees, and were on their way to a paint job when Hicks received three pages in a row from Tammy Hodson. Hicks called Hodson and learned of Koontz's death, at which point both men went to Koontz's trailer park. During the initial interrogation, Shane at first denied having a .25 caliber handgun, but quickly retracted, admitting that he kept a .25 caliber in a brief case in his Suburban. He claimed the gun had sentimental value, and had been used for target practice at the residence of Hicks's parents. He consented to a search of his truck, in which a .25 caliber casing was found. A subsequent search of Hicks's parents' residence turned up three spent shell casings.

On August 8, Shane returned to the police station and changed his former

---

1. Shane also argues that the prosecutor engaged in misconduct and attempted to improperly influence the jury by repeatedly referring to a "close" relationship between the two defendants as a motive for the murder. Shane believes that these comments inflamed the jury by leading them to believe that Shane and Hicks had a homosexual relationship when there is no evidence of such relationship in the record. Not only did these comments never actually refer to a homosexual relationship, but Shane's attorney never objected to the comments. The failure to object to prosecutorial comments at trial waives this argument on appeal. *See Isaacs v. State,* 673 N.E.2d 757, 763 (Ind.1996).

statement. At this point, he told the officer that he had concocted the previous story with Hicks. He now stated that after Hicks and Shane returned home from Taco Bell, Hicks left again to go to Koontz's to have sex.

On May 4, 1995, Shane was again questioned. At this point, he had been arrested for feticide and murder, and he again changed his story. This time, he claimed that after arriving home from Taco Bell at around 11:00 p.m., Shane drove Hicks to Koontz's house on a motorcycle. They parked in the back, and Hicks told Shane to wait for him while he checked to see if Koontz would have sexual intercourse with him. Shane watched Hicks go up to the door and go in. He heard nothing inside the trailer. Hicks came out of the house a couple of minutes later, acting flustered, and they returned home around 1:30 a.m. The next morning, on the way to work, Hicks told Shane that something bad had happened, pulled out a gun, and told Shane that he had to get rid of it. They drove to a remote country pond and disposed of the gun.

Shane identified the pond in which the gun had been thrown. Investigators recovered the gun, and subsequent testing showed that the bullets and casings from Koontz's house, Shane's car, and Hicks's parents' residence were all fired from this gun. The autopsy revealed that Koontz had probably died in the early morning of July 28, 1994, several hours before her body was discovered. An investigation of the crime scene revealed no evidence of robbery, but fresh marks on the door frame suggested a forced entrance.

Shane and Hicks were childhood friends and owned a business together. Hicks often lived with Shane and each of them served as best man in the other's wedding. Shane and Hicks spent most of their free time together, and had a close relationship.

At trial, several witnesses testified about the violent relationship between Hicks and Koontz. Hicks at one point became so violent that Koontz was hospitalized. An-other time, Koontz stabbed Hicks in the hand. Several witnesses testified that Koontz was afraid of Hicks, telling her friends "[i]f I ever get killed in my living room on my couch [ ] Rob Hicks probably has something to do with it." (R. at 315.) Elizabeth Bentley, a neighbor, testified that the night before the murder, Koontz came over to her house to complain about an argument with Hicks about the baby's room. Koontz told Bentley that she became so mad that she had wet her pants.

Jessica Daniels, a close friend of Shane's, testified as to a conversation between herself, Shane and Hicks two nights before the murder. Hicks began to talk of killing Koontz, and said "yeah, you tell her about it, David." (R. at 584.) Shane told Daniels that Hicks wanted to go and blow "Nickie's" head off one night, and wanted Shane to take him there. (R. at 585.)

Amy Case, Shane's ex-wife, also testified at Shane's trial. Case testified that Shane hated Koontz. She said that she had overheard a conversation between Hicks and Shane in which Hicks said he was so mad at Koontz, he wanted her dead, and Shane responded "it could be done, we could do that." (R. at 744.) She also recounted an overheard conversation between Shane and Hicks on how to commit the "perfect murder" and get away with it. (R. at 746.)

### I. Discussion

#### A. Sufficiency of the Evidence

 Shane believes that his convictions are not supported by sufficient evidence. When reviewing a conviction for sufficiency of the evidence, this Court looks to the evidence most favorable to the State and all of the reasonable inferences to be drawn from such evidence. *See Blanche v. State*, 690 N.E.2d 709, 712 (Ind. 1998) (citing *Deckard v. State*, 670 N.E.2d 1, 3 (Ind.1996)). We will affirm the original sentence unless there is no way a reasonable trier of fact could have found Defendant guilty. We do not reweigh the evidence or assess the credibility of wit-

nesses, but merely look to the evidence to determine whether there was substantive probative evidence to support the judgment. *See id.* (citing *Minter v. State,* 653 N.E.2d 1382, 1383 (Ind.1995)).

### Murder & Feticide

■ Shane challenges his murder conviction. To sustain a murder conviction, the evidence must show that the defendant intentionally or knowingly killed another. Ind.Code § 35–42–2–1(a) (1998). Furthermore, Indiana Code § 35–41–2–4 allows a defendant to be convicted of a crime based on his accomplice liability, providing that "one who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." An accomplice can be held criminally liable for "everything done by his confederates which was a probable and natural consequence of their common plan." *Harris v. State,* 425 N.E.2d 154, 156 (Ind.1981) (citing *Proctor v. State,* 272 Ind. 357, 397 N.E.2d 980 (1979)). In determining accomplice liability, the jury may "infer participation from defendant's failure to oppose the crime, companionship with the one engaged therein, and a course of conduct before, during, and after the offense which tends to show complicity." *Harris,* 425 N.E.2d at 156. An accomplice is equally as culpable as the one who commits the actual crime. *See Johnson v. State,* 687 N.E.2d 345, 349 (Ind.1997). Therefore, if the evidence shows that Shane, by his course of conduct, assisted Hicks in the Koontz murder, he may be charged with and convicted of murder. To sustain a feticide conviction, the state must show that Shane either knowingly or intentionally terminated a human pregnancy with an intention other than to produce a live birth or to remove a dead fetus, or knowingly or intentionally aided, induced, or caused another to commit that offense. *See* Ind.Code §§ 35–42–1–6 and 35–41–2–4 (1998). Because Shane and Hicks knew that Koontz was pregnant when the murder occurred, and because the fetus died as a result of the death of the mother, by

showing the sufficiency of the evidence supporting the murder conviction, sufficiency of the evidence supporting the feticide conviction follows.

■ The following evidence supports Shane's murder conviction. Shane had a long-standing dislike of Koontz, and referred to her as a "foul-mouthed bitch." (R. at 744.) Amy Case, Shane's ex-wife, testified that Shane wanted a divorce in order to spend more time as a single man with Hicks. Several other witnesses testified that Shane and Hicks spent all of their free time together. A reasonable juror could infer from this testimony that Shane resented Koontz for interfering in his friendship with Hicks. Mere days before the murder, Shane disclosed to Jessica Daniels that Hicks wanted to kill Koontz and wanted Shane to help him by driving him over to Koontz's residence one night. Shane did, in fact, drive Hicks over to Koontz's house the night of the murder. Further, Shane's gun was used to murder Koontz. Finally, Shane helped Hicks dispose of the murder weapon the next morning. While Shane provided alternative explanations for his behaviors, these alternative explanations also gave the jury reason to believe he was untruthful. A reasonable jury could believe, based on the above evidence, that Shane knew that Hicks intended to kill Koontz on the night of the murder, and facilitated the murder by driving Hicks to Koontz's residence, providing the murder weapon, and assisting in disposal of the weapon the following morning. Contrast the present facts with those in *Harris* where we upheld the defendant's conviction despite his claim that the evidence showed only that he was in the vicinity during the commission of the crime. *See Harris,* 425 N.E.2d at 155. The evidence is sufficient to support Shane's murder conviction.

### Conspiracy

■ Shane also challenges the conspiracy conviction as unsupported by suffi-

cient evidence. To sustain a conspiracy conviction, the evidence must show that defendant had the intent to commit the felony, entered into an agreement with another to commit a felony, and performed an overt act in furtherance of the agreement. *See* Ind.Code § 35–41–5–2(a) (1998); *Wright v. State*, 690 N.E.2d 1098, 1107 (Ind.1997). Therefore, the conspiracy conviction will stand if there is evidence showing that Shane and Hicks entered into an agreement to kill Koontz, and Shane performed an overt act in furtherance thereof. An agreement to commit a conspiracy need not be formal. *See id.* As long as the facts and other evidence show that an agreement was entered into, a conspiracy conviction is proper. *See Mullins v. State*, 523 N.E.2d 419, 424 (Ind. 1988).

 The evidence of conspiracy in this case is largely the same evidence used to sustain the murder conviction.[2] The most significant evidence is the conversation two days before the murder between Hicks and Shane in which Hicks said he planned to kill Koontz, and Shane told Jessica Daniels that Hicks wanted Shane to take him to Koontz's residence, combined with the fact that Shane actually brought Hicks to Koontz's trailer on the night of the murder. Further, Shane helped Hicks dispose of the gun, and, together with Hicks, concocted an alibi to explain their whereabouts the night of the murder. A reasonable juror could easily infer, based on these facts, that Shane agreed with Hicks to murder Koontz. When Shane drove Hicks to Koontz's trailer, this constituted an overt act in furtherance of the conspiracy. We affirm the conviction for conspiracy.

### Assisting a Criminal

 To sustain a conviction for assisting a criminal, the evidence must show that Shane intended to harbor, conceal, assist, or hinder the apprehension of a person who committed a crime or is a fugitive from justice. *See* Ind.Code § 35–44–3–2 (1998). Shane clearly intended to assist Hicks and hinder the apprehension of Hicks by helping Hicks dispose of the gun. Hicks pulled a gun out of his pocket the day after the murder and told Shane that he needed to get rid of it. Shane then drove Hicks to a place in the country, where Hicks rolled down the window and threw the gun in a pond.

### B. Admissibility of Evidence

Shane asserts that two items of evidence were erroneously admitted. These include 1) testimony about a discussion between Shane and Hicks about how to accomplish the "perfect murder," and 2) a video and photographs of a pool party and a wedding reception.

#### 1. "Perfect Murder" Evidence

Shane argues that Amy Case, a friend of Shane's, should not have been allowed to testify as to a conversation she overheard between Shane and Hicks. This conversation occurred after Shane and Hicks returned from a funeral. Shane and Hicks believed that a man at the funeral had murdered the deceased, and started talking about ways this man had "messed up." (R. at 745.) Case heard Shane boast to Hicks that he knew how to accomplish the "perfect murder." (R. at 746.) Shane said that he would have worn long sleeves and gloves to avoid gun residue on the skin, and would have disposed of the gloves because fingerprints would be present on the inside of the gloves.

 This testimony was entered over a relevance objection lodged by Shane's attorney. The trial court has wide discretion to rule on the relevancy of evidence, and we review a trial court's ruling on relevance for an abuse of that discretion. *See Sanders v. State*, 704 N.E.2d 119, 124 (Ind.1998). Relevant evidence is that evidence which has any tendency to

---

**2.** The dissent (Boehm, J.) raises a concern about possible multiple punishment implica-tions; the defendant did not raise this issue on appeal.

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Ind. R. Evid. 401. Put simply, relevant evidence is probative evidence. *See Sanders,* 704 N.E.2d at 124. In the present case, the State claims that the "perfect murder" evidence was relevant to prove that Shane and Hicks conspired to commit this murder. We fail to see how this discussion evidences a plan to murder Koontz, nor can we think of any other way in which this evidence is probative of an agreement to kill Koontz. The Koontz murder was not accomplished in the way described in the "perfect murder" scenario. Koontz was not mentioned in this conversation even by inference. It was error for the trial court to have admitted this evidence.

However, even erroneously admitted evidence may not require reversal if the error is found to be harmless. *See Ford v. State,* 704 N.E.2d 457, 460 (Ind. 1998). A harmful error is one which causes prejudice to the appellant's substantial rights. *See id.* at 460 (citing *Martin v. State,* 622 N.E.2d 185, 188 (Ind. 1993)). When conducting this inquiry, the appellate court must review the record as a whole to determine the probable impact of the evidence on the jury. *See id.* (citing *Alva v. State,* 605 N.E.2d 169, 171 (Ind. 1993)).

In the present case, we do not think the jury was swayed by the inadmissible evidence. This testimony was not graphic or detailed. Shane in this testimony did not discuss his feelings towards the victim. In fact, Shane expressed no intent to actually carry out the perfect murder at all. Furthermore, Shane directly expressed animosity towards Koontz on a number of other occasions, a fact which

was revealed through admissible evidence. Shane also discussed the idea of murdering Koontz specifically only two nights before the murder, a fact which was also introduced through the admissible testimony of Jessica Daniels.

### 2. Video Tape and Photographs

Shane contends that a video tape and photographs of a pool party and a wedding reception should have been excluded from evidence. He argues that the introduction of this evidence violated a pre-trial agreement between Shane and the State, an agreement which was solidified in a pre-trial order. Shane further contends that by allowing this evidence to be admitted during trial, he was denied the time to prepare an adequate defense.[3]

This agreement was negotiated because the State wanted to amend the conspiracy charge but did not want Shane to seek a continuance. To avoid delay, the State agreed to limit their witnesses to those used in Hicks's trial in return for Shane's promise not to demand a continuance after the addition of the conspiracy charge, with the exception of possible rebuttal witnesses. The judge solidified this agreement in a pre-trial order entered on April 24, 1997. The relevant portion read:

> 3. Defendant has agreed to the amended indictment being filed, in consideration of proceeding with his jury trial scheduled for Monday, May 5, 1997, rather than seek a continuance of the scheduled trial....
>
> 5. Defendant and Prosecuting Attorney stipulate and agree that in consideration of no objection to Amended Indictment, witnesses and evidence submitted by Prosecuting Attorney at Defendant's trial shall be substantially same witnesses

3. Shane also contends that the admission of this evidence denied him his right to cross-examine the tape and the photographs. His entire argument concerning cross-examination is contained in the following sentence: "The defendant could not cross examine the tape and photographs." The failure to develop an argument results in a waiver of that argument. *See* Ind.App. R. 8.3(A)(7). Shane did not cite the provision of the Indiana or Federal Constitution he believes was violated, nor did he provide any authority in support of his argument, and this argument is therefore waived.

and evidence as submitted at jury trial of Robert Hicks in 1996.

(R. at 84.)

The judge allowed the video tapes to be entered over an objection by Shane's attorney. He stated that:

[t]he Court is going to permit the video tapes of the two events and the two pictures of the wedding reception to be admitted, believing that they are somewhat cumulative of prior evidence that has already been admitted in the proceeding or at least the jury has been made aware of even though they perhaps violate the Court Order of April 24th.

(R. at 694.)

■■■■ Shane believes that the trial court was bound by this agreement in the same way a court is bound by the terms of a plea agreement. However, a plea agreement is different in nature from a pre-trial agreement regarding evidence to be used at trial. A plea agreement is a final resolution of a charge. It is defined as "an agreement between a prosecuting attorney and a defendant concerning the disposition of a felony or misdemeanor charge." Ind. Code § 35–35–3–1 (1998). A plea is "contractual in nature, binding the defendant, the state and the trial court." *Pannarale v. State*, 638 N.E.2d 1247, 1248 (Ind.1994). The agreement between the parties in this case revolves around evidence, and the admissibility of evidence is squarely within the discretion of the trial court. Evidentiary rulings do not resolve the ultimate issue of guilt or innocence. They are not contractual in nature, but are rather discretionary in nature. Even where a pre-trial order governing evidence has been issued, the trial court retains the discretion to add or deny evidence at trial. *See Johnson v. State*, 580 N.E.2d 670, 672 (Ind. 1991) (adding witnesses to a witness list during the course of the trial is within discretion of trial court). The trial court, when deciding whether to allow evidence to be admitted during the course of a trial, must consider whether the additional evidence would prejudice the defendant. *See id.* at 672.

■■■■ The videos and photographs simply showed Shane and Hicks interacting on two separate occasions. Shane claims that these videos were entered to inflame the jury by alluding to a homosexual relationship between Shane and Hicks. After reviewing the evidence, however, we find that the videos simply establish that Shane and Hicks were close. This fact was established by numerous witnesses at trial. As noted by the trial court, the admission of this evidence was cumulative, and not prejudicial to Shane. It was well within the discretion of the trial court to allow it into evidence.

Finally, Shane was not denied the opportunity to prepare a defense to the videotapes and photographs. If Shane felt that the unexpected addition of evidence rendered him unprepared, he should have motioned for a continuance. Further, Shane was also offered the opportunity to rebut this evidence in his own case-in-chief. However, Shane did not present any evidence beyond that presented in the State's case-in-chief. Finally, as this evidence was cumulative of other evidence presented at trial, Shane's attorney had ample time to prepare a defense against this evidence. His argument must fail.

*Sentencing*

■■■■ Shane believes that his sentence was incorrectly calculated when the trial judge failed to reduce each of his sentences by the 775 days he spent in prison prior to conviction. He was sentenced to sixty years with four years suspended for murder, eight years for feticide consecutive to his murder charge. He was also sentenced to fifty years for conspiracy to run concurrently to his murder charge, and four years for assisting a criminal to be served concurrently with the feticide charge. The judge reduced the total sentence by 775 days, while Shane contends that each sentence should have been reduced by 775 days. Jail credit is governed

by Indiana Code § 35–50–6–3 (1998), and provides in pertinent part that "[a] person assigned to Class I earns one (1) day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing." Where a defendant is convicted of multiple offenses and sentenced to consecutive terms, the jail credit is applied against the aggregate sentence. *See Lanham v. State*, 540 N.E.2d 612, 613 (Ind.Ct.App.1989) (citing *Simms v. State*, 421 N.E.2d 698 (Ind.Ct.App.1981)). The trial court properly applied the jail credit against the aggregate sentence.

### Conclusion

We affirm the trial court.

SHEPARD, C.J., and DICKSON, J., concur.

SULLIVAN, J., dissents with opinion.

BOEHM, J., dissents with opinion.

SULLIVAN, Justice, dissenting.

I agree with the majority that it was error to permit Amy Case to testify as to the conversation she overheard between Shane and Hicks concerning the commission of a "perfect murder." I do not agree, however, that the error was harmless.

The standard for harmless error applicable here was articulated by Justice Dickson in *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995): "[A]n error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." Here, the evidence was extremely attenuated that Shane knowingly or intentionally aided Hicks in committing murder and that he and Hicks conspired to commit murder. Because the evidence of guilt was so attenuated, testimony that the defendant had engaged in a discussion of how to commit a "perfect murder" might well have had a substantial effect on the jury's view of Shane's guilt. I believe that the testimo-

ny's probable impact on the jury cannot be said to be sufficiently minor so as not to have affected Shane's substantial rights.

BOEHM, Justice, dissenting.

I respectfully dissent. For the reasons stated below, I think there is clear proof of assisting a criminal but insufficient evidence to support the convictions for murder, feticide and conspiracy to murder.

Shane's murder conviction was based solely on accomplice liability. To sustain a conviction as an accomplice, "there must be evidence of the defendant's affirmative conduct, either in the form of acts or words, from which an inference of common design or purpose to effect the commission of a crime may be reasonably drawn." *Peterson v. State*, 699 N.E.2d 701, 706 (Ind.Ct.App.1998). Mere presence at the scene is not sufficient to prove participation. *Wright v. State*, 690 N.E.2d 1098, 1106 (Ind.1997).

In this case, the only evidence supporting accomplice liability was (1) Shane's statement to police that he drove Hicks to Koontz's mobile home early in the morning on July 28, 1994, so that Hicks could have sexual intercourse with Koontz, (2) statements by Hicks over a period of time that he wanted to kill Koontz, and (3) testimony from Jessica Daniel that two days prior to the murder Shane repeated Hicks' desire to kill Koontz and to have Shane drive Hicks to her mobile home. As to the first, Shane also stated that he had taken Hicks to Koontz's trailer for the same purpose on other occasions, and no evidence contradicted this. As to the third, Daniel also testified that at the time Shane reported Hicks' statement, Shane shook his head as if to say it was a "crazy" idea. Over a period of at least two years, Hicks had frequently repeated but never implemented threats on Koontz's life. Given the other evidence that Shane had driven Hicks to Koontz's home on several occasions during that period, I do not believe this record supports a finding beyond a reasonable doubt that Shane had reason to

know Hicks planned to kill Koontz that night.

The majority also points to testimony of a witness who attested to Shane's dislike of Koontz, and reported conversations that took place over two years before Koontz's death. In one of those, Hicks and Shane discussed a "perfect murder" that bore no relationship to Koontz's killing. In the second, Shane responded "it could be done, we could do that" to Hicks' expressed desire to kill Koontz. Personal animosity is insufficient to support a murder conviction. The statement regarding the "perfect murder," made at least two years prior to the murder, was wholly extraneous for the reasons the majority identifies. Finally, the response by Shane to Hicks' statement that he wanted Koontz dead was also far too remote in time to establish Shane's intent on the night of the murder, given that Shane had driven Hicks to Koontz's home several times in the interval. Even drawing all reasonable inferences in favor of the verdict, I think there is insufficient evidence to find beyond a reasonable doubt "an inference of common design or purpose to effect the commission of a crime." Because the feticide conviction follows from the murder conviction, that, too, should be vacated.

For similar reasons, I also think there is insufficient evidence to support Shane's conspiracy conviction. The majority states that the evidence to support the conspiracy conviction is largely the same as that used to support the murder conviction. Although a formal agreement is not required to support a conspiracy conviction, in this case I find no evidence from which to draw an inference of an agreement. The conversation between Hicks and Shane two days before the murder may support an inference that Shane knew Hicks wanted to kill Koontz, but certainly does not support an inference of an agreement between the two. Shane's reported response to Hicks' expressed desire to kill Koontz and have Shane drive him to her home suggests the opposite inference. The other evidence the majority points to, including the disposal of the weapon and Shane's changing story to police, supports the conviction for assisting·a criminal, but adds nothing to the conspiracy conviction. Because there is insufficient evidence to support an agreement between Shane and Hicks to kill Koontz, I would vacate the conspiracy conviction.

As a final point, I think the fact that two convictions rest on the same action by Shane is also problematic. The only action Shane took to "participate" in the murder was to drive Hicks to Koontz's home. The "substantial step" charged in the conspiracy was also driving Hicks to Koontz's home. This looks like multiple punishment for the same act which is proscribed by our common law. *See Thompson v. State,* 259 Ind. 587, 592, 290 N.E.2d 724, 727 (Ind.1972) (before the court may enter judgment and impose sentence upon multiple counts, the facts giving rise to the various offenses must be independently supportable, separate and distinct). Accordingly, even if there were sufficient evidence to support both the murder and conspiracy charges, conviction on both would be improper.