

FILED

Mar 28 2025, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

K.M.,

*Appellant-Petitioner*

v.

Indiana Department of Child Services,

*Appellee-Respondent*

March 28, 2025

Court of Appeals Case No.
24A-XP-1783

Appeal from the Wabash Circuit Court

The Honorable Robert R. McCallen III, Judge

Trial Court Cause No.
85C01-2309-XP-585

**Opinion by Judge Weissmann**
Judges Pyle and Felix concur.

**Weissmann, Judge.**

After the infant daughter (Child) of K.M. (Mother) arrived at a hospital with broken bones, the Indiana Department of Child Services (DCS) substantiated abuse allegations. Mother also faced criminal charges for alleged neglect of Child. But a more in-depth medical evaluation revealed Child suffered from a genetic condition that can predispose individuals to bone fragility fractures and that both Mother and Child's father carried the gene. Because of this diagnosis, DCS sought and obtained dismissal of the CHINS case, and the State dropped the criminal charges against Mother. Yet the trial court later refused to expunge the DCS records relating to the incorrect substantiation, ruling that the demonstrably false allegations might have some future probative value for DCS. Finding this conclusion against the logic and effect of the facts and circumstances, we reverse.

## Facts

Mother delivered Child in 2016 with difficulty. Child became stuck in the birth canal after her head was outside Mother's body, and the doctor had to pull Child out. Child was very ill during the first 11 weeks of her life. She had difficulty keeping liquids down, and she flushed easily and sweated profusely. Child's body was very flexible, lacked muscle strength, and showed unexplained bruising.

When Child was about two months old, Mother and her then husband (Father) found Child unresponsive. Mother attempted chest compressions to resuscitate

Child before an ambulance arrived to take Child to the hospital. The hospital determined that Child had two rib fractures, as well as bilateral clavicle fractures.

[4] DCS thereafter received a report about Child's healing fractures. Initial medical evaluations ruled out trauma from birth and metabolic disorders, leading to a presumption of non-accidental injury. DCS petitioned to find Child to be a child in need of services (CHINS) and removed her from her parents' care.

[5] Criminal charges for neglect of a dependent were filed in April 2016 against Mother and Father. Father ultimately pleaded guilty under a plea agreement that required the State's dismissal of Mother's charges.

[6] While the CHINS petition was pending, Mother and Father arranged to have Child evaluated by Dr. Michael Holick, who was associated with the Boston University School of Medicine and Boston Medical Center. Dr. Holick diagnosed Child with Ehlers-Danlos Syndrome (EDS) type 3. EDS is a genetic condition that can predispose individuals to fractures due to bone fragility. Dr. Holick, an expert on EDS, diagnosed both Mother and Father with the condition as well. Child's pediatrician agreed with that diagnosis.

[7] Based on the EDS diagnosis, DCS moved to dismiss the CHINS petition about a year after it was filed. DCS alleged:

> In light of the lack of present safety concerns for the children, the fact that the parents have demonstrated their ability [to] provide for the medical needs of the children, and, in part, the medical findings of Dr. Holick, the DCS does not believe that the

coercive intervention of the court is any longer necessary in this matter. The circumstances that initially resulted in the filing of the petition alleging the children are children in need of services have substantially changed and there is no longer a legally sufficient basis to proceed under this cause.

Exhs. Vol. II, p. 4. The CHINS court granted the motion and dismissed the CHINS action. Child was returned to Mother's care and has remained there without incident for the past eight years.

[8] Mother's and Father's subsequent administrative appeal of the DCS substantiation of abuse was unsuccessful. The substantiation therefore remains in DCS records and has resulted in Mother being placed on the Child Protection Index, a database that tracks perpetrators of substantiated abuse. These DCS records impinged Mother's efforts to participate in her children's school activities. For instance, she is not allowed to serve as an escort on her children's field trips due to the DCS substantiation.

[9] The DCS records also limited her efforts to pursue employment opportunities in education and childcare. Mother received job offers from a daycare facility and as a teacher's aide at Child's school, but both offers were withdrawn due to Mother's placement on the Child Protection Index (CPI)—a database that includes the names of child abuse perpetrators—because of DCS's abuse substantiation. Each of the two employers told Mother that she could have the job if this substantiation "was taken care of." Tr. Vol. II, p. 25.

[10] Mother soon petitioned to expunge the DCS records. Under Indiana Code § 31-33-27-5 (Expungement Statute), a court may order DCS to expunge a substantiated report if the court finds by clear and convincing evidence that: (1) there is little likelihood the petitioner will be a perpetrator of abuse or neglect in the future; and (2) the information contained in DCS records has insufficient probative value to justify its retention.

[11] At the hearing on Mother's petition, the local DCS director asked the court to deny the expungement. She reported that the DCS records were necessary in case another abuse incident involving Mother occurred. The court also heard testimony from Dr. Holick, who revealed the EDS diagnosis for Child, who was then eight years old.

[12] The trial court denied the expungement petition in a written order. Viewing Dr. Holick's credentials as "impeccable," the court found "credible and persuasive" his testimony that Child suffered from EDS. App. Vol. II, p. 19. The court did "not believe [Mother] has ever been a perpetrator of abuse or neglect." *Id.* "By all accounts, [Mother] is an excellent mother who went to great lengths to determine the cause of her child's injuries," according to the court. *Id.* It concluded that Mother had proven by clear and convincing evidence the first prong of the Expungement Statute, given that there was little likelihood Mother would be a future perpetrator of abuse or neglect.

[13] Yet the court then found that "despite the fact the Court does not believe Petitioner poses any threat whatsoever to her or any other children," Mother's

desire "to obtain employment at her children's school and/or in childcare" meant that the information that she sought to expunge "would or could have significant probative value." *Id.* The court therefore concluded that clear and convincing evidence did not support the second prong of the Expungement Statute and denied expungement on that basis. Mother appeals.

## Discussion and Decision

[14] We review for an abuse of discretion the trial court's denial of an expungement of substantiated records of neglect or abuse. *B.T. v. State*, 219 N.E.3d 172, 174 (Ind. Ct. App. 2023). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it or when the trial court misinterprets the law. *Id.* "In reaching this decision, we neither reweigh evidence nor assess witness credibility." *Id.*

[15] Only the second prong of the Expungement Statute—"the information has insufficient current probative value to justify its retention in records of the department for future reference"—is at issue on appeal. Ind. Code § 31-33-27-5(f)(2). For several reasons, we find the trial court abused its discretion by determining that the records retained probative value solely because Mother might seek future employment with children.

[16] First, the medical evidence comprehensively established, and the trial court found, that Child's injuries resulted from an undiagnosed genetic condition rather than abuse. Multiple medical professionals confirmed Child suffered from EDS. Dr. Holick opined that the fractures that hospital personnel detected

when Child was two months old were likely caused by birth trauma and emergency resuscitation efforts.

[17] DCS itself determined this evidence, combined with other circumstances, was sufficiently compelling to seek dismissal of the CHINS case. The State dismissed the criminal charges against Mother as well, and those charges were later expunged. The trial court here explicitly found it did not believe Mother had ever perpetrated abuse. Records of a DCS substantiation that has been medically refuted and that the trial court specifically found were untrue carry minimal, if any, probative value.

[18] Second, the trial court's reasoning that the records have probative value simply because Mother might work with children in the future effectively bars relief for falsely accused parents hoping to participate in the education or care of children, including their own. This overly broad interpretation would frustrate the remedial purpose of the Expungement Statute. *See generally Ball v. State*, 165 N.E.3d 130, 136 (Ind. Ct. App. 2021) ("The expungement statutes are inherently remedial, and as such, should be liberally construed to advance the remedy for which they were enacted.").

[19] Third, the evidence presented to the trial court demonstrates the DCS records are hampering Mother's ability to be involved in her own children's education and activities. Yet the trial court acknowledged Mother's history of "excellent" parenting. App. Vol. II, p. 19. Where, as here, the trial court has found both that the petitioner presents no future risk and that the claims of abuse

underlying the CHINS action were erroneous, allowing the records to continue restricting a parent's engagement with their children's schooling does not serve the child protection purposes of the CPI. *See, e.g.*, Ind. Code §§ 31-33-26-2 through 31-33-26-16 (requiring DCS to maintain a database of "substantiated reports of child abuse and neglect" that is available to certain entities tasked with caring for or protecting children). The court explicitly found that Mother posed no threat to her own or other children.

[20] The trial court's finding that one of the two requirements of the Expungement Statute was not met has the unfortunate effect of ensuring that Mother's name will remain on the CPI. As the CPI essentially labels Mother a child abuser but the trial court found Mother is not one, this outcome is the functional equivalent of finding a criminal defendant not guilty but sending the defendant to jail anyway.

[21] It simply defies logic to conclude that information proven to be false retains probative value in determining the fitness of the person against whom the false allegation was lodged. The essence of probative value lies in the information's relevance. *See Shane v. State*, 716 N.E.2d 391, 398 (Ind. 1999) ("Put simply, relevant evidence is probative evidence."); Ind. Evidence Rule 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probative than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Accusations of child abuse that are expressly found by a court to be untrue are not relevant to the falsely accused person's fitness to be around children.

Here, medical evidence has established, and the trial court found, that Child's injuries were caused by a genetic condition, not abuse. Maintaining records of a demonstrably false substantiation not only serves no legitimate evidentiary purpose but also could potentially mislead or disrupt future investigations by preserving disproven conclusions. Under these circumstances, these DCS records merely prove the falsely accused parent suffered an injustice that a denial of expungement only prolongs.

## Conclusion

In light of the trial court's finding that the abuse allegations were false, its accompanying determination that the false allegations have current probative value is inconsistent and against the logic and effect of the facts and circumstances before it. As Mother met her burden of proving both elements of the Expungement Statute by clear and convincing evidence, we conclude the trial court abused its discretion in denying expungement. We reverse and remand with instructions to grant Mother's petition for expungement of the DCS substantiation.

Pyle, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT
Rebecca M. Collins
Plymouth, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana