**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 30 2013, 8:51 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**KERRY L. WILLIAMS**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KERRY L. WILLIAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1111-PC-519 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1010-PC-21

**January 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Kerry L. Williams, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief. Williams raises seven issues which we consolidate and restate as:

I. Whether Williams was deprived of a procedurally fair post-conviction hearing;

II. Whether the court erred by denying Williams's motion to dismiss.

III. Whether the post-conviction court erred in denying Williams's petition for relief based upon his argument that the State improperly suppressed evidence; and

IV. Whether Williams was denied the effective assistance of trial counsel.

We affirm.

## FACTS

On August 31, 2006, Elkhart City Police Officer James Anderson, who was working as an undercover officer, and a confidential informant made contact with Williams. Williams and the confidential informant had a short conversation and then Williams entered the vehicle which was equipped with a recording device and being driven by Officer Anderson. Officer Anderson followed Williams's directions and eventually arrived at a residence in Elkhart City. Officer Anderson gave Williams $250, and Williams returned with a baggie containing crack cocaine.

## COURSE OF PROCEEDINGS

On December 27, 2006, the State charged Williams with Count I, dealing cocaine weighing three grams or more as a class A felony; and Count II, dealing cocaine as a class B felony. On January 4, 2007, Williams chose to proceed *pro se*, and the court

2

appointed standby counsel. In early January, the prosecutor made a plea offer to Williams. At a hearing on January 25, 2007, Williams acknowledged the offer and indicated that he wanted to proceed with trial.

Beginning on January 29, 2007, the court held a jury trial. At trial, the parties and the court engaged in a discussion regarding State's Exhibit 2 which was the portion of the audio recording related to the transaction from August 31, 2006. Williams argued that State's Exhibit 2 was incomplete and that his copy was blank. The prosecutor acknowledged that "there was other stuff that happened when they were driving around earlier; but [State's Exhibit 2] relates to the transaction . . . ." Trial Transcript at 167. Williams eventually admitted that he listened to all of State's Exhibit 2, and objected because "[i]t's not the original." Id. The prosecutor indicated that the State had a copy of the entire transaction and that he had told Williams's standby counsel that he would provide him a copy. According to Officer Anderson's testimony, State's Exhibits 3A and 3B consisted of an audio recording of the complete encounter from when Williams entered the vehicle until he exited the vehicle. The court stated: "If [the defense] want to have the balance of it played under the Rule of Completeness, I will allow them to do that." Id. at 169.

The next day, Williams indicated that he had listened to both State's Exhibit 2 as well as the recording of the entire episode. While Officer Anderson testified that State's Exhibits 3A and 3B constituted an audio recording of the encounter from when Williams entered the vehicle until Williams exited the vehicle, Williams appeared to argue that there was additional discussion that was not included on State's Exhibits 3A and 3B

3

including that Williams asked Officer Anderson whether he was an undercover officer. When asked by the trial court whether he wanted the entire recording played, Williams indicated that he did not and that he only wanted State's Exhibit 2 played for the jury. State's Exhibit 2 was played for the jury.

The State introduced State's Exhibit 4 which was the laboratory report from the Berrien County Forensic Laboratory in which the crack cocaine was identified and measured. Williams objected on the basis that he signed a stipulation that the content of the baggie was cocaine base but that he did not stipulate to the weight of the cocaine.[1] The trial court referenced the stipulation and indicated that there was no agreement because there was no meeting of the minds. Following a recess, the parties provided a document signed by Williams that stated: "The parties stipulate and agree that the drugs contained in State's Exhibit 1 consist of 5.910 grams of crack cocaine. The Defendant waives the testimony of the lab personnel and accepts their written findings, State's Exhibit 4, into evidence." Id. at 222. Williams confirmed that this was his agreement, and the court admitted State's Exhibit 4.

The jury found Williams guilty of Count I, dealing in cocaine weighing three grams or more as a class A felony. The court entered a judgment of conviction of dealing in cocaine weighing three grams or more as a class A felony and dismissed Count II. The court sentenced Williams to forty years.

---

[1] The initial stipulation was dated January 26, 2007, and as read by the trial court stated: "I, Kerry L. Williams, hereby agree to not call the lab people in my case, 20D03-06-FA-64, and to stipulate to the identity of the cocaine in this case. I hereby affirm under the penalties for perjury that the above representations are true and accurate. Signed Kerry L. Williams, pro se." Trial Transcript at 222.

4

In August 2007, Williams filed a motion to file a belated appeal, which this court granted. After various motions and orders, this court issued an order dated March 4, 2008, which ordered Williams to file his brief and appendix within thirty days and stated that failure to timely file the appellant's brief and appendix would subject the appeal to dismissal. By April 25, 2008, Williams had still not filed an appellant's brief, and this court dismissed the appeal on April 28, 2008.

On October 18, 2010, Williams, *pro se*, filed a petition for post-conviction relief alleging that there were numerous grounds for setting aside his conviction. Williams's petition indicated that he had not retained an attorney and that he did not wish to have a public defender represent him. On November 24, 2010, the State filed an answer to Williams's petition. On December 8, 2010, Williams filed a motion to amend his petition for post-conviction relief, a motion for issuance of subpoenas, and other motions.[2] On December 16, 2010, Williams filed a motion to dismiss which requested the court to vacate his conviction on the basis that the charging information was defective.

On January 13, 2011, the court held a preliminary hearing on Williams's motions. During the hearing, the court and Williams engaged in a discussion regarding the witnesses mentioned in his motion for issuance of subpoenas. The court explained to Williams why it refused to grant subpoenas with respect to certain witnesses. The court also denied Williams's motion to dismiss.

After the hearing, the court issued a subpoena to Michael K. Banik, who had been the deputy prosecutor at Williams's trial. On March 21, 2011, Williams filed another

---

[2] The record does not contain the motion for issuance of subpoenas filed on December 8, 2010.

motion for issuance of subpoenas in which Williams requested subpoenas for approximately twenty people. An entry in the chronological case summary dated March 25, 2011, states: "MOTION denied in all particulars except that in so far as it seeks issuance of SUBPOENA DUCES TECUM to Attorney Michael Banik, which Petition is granted in that regard." Appellant's Appendix at 6.

On April 7, 2011, the court held an evidentiary hearing. On May 25, 2011, Williams filed a thirty-six page document titled "Closing Argument by Affidavit" which included an "Affidavit Offer of Proof for Exclusion of Witnesses" and an "Offer of Proof Affidavit for Unavailable Witness." Id. at 45-80. On July 7, 2011, Williams filed a thirty-six page memorandum of law in support of post-conviction relief.

On October 3, 2011, the court denied Williams's petition. The court's order states:

7. In his PETITION FOR POST CONVICTION RELIEF, [Williams] alleges "subversion of the legal process" because Michael Banik, former deputy prosecuting attorney, communicated with stand by counsel when [Williams] was representing himself; that stand-by counsel was ineffective for failing to communicate with [Williams]; that [Williams] was denied the right to confront witnesses, specifically lab personnel regarding the illicit drugs admitted into evidence in his trial; that the evidence was insufficient to sustain the verdict of guilty; and, that the charging information was not sufficient to apprise him of the charges against him.

8. In the instant case, [Williams] chose to represent himself during trial and on direct appeal. Because he represented himself, he cannot bring a Sixth Amendment claim of ineffective assistance of counsel. Wright v. State, 663 N.E.2d 210, 212 (Ind. Ct. App. 1996). Pro se litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. A trial court is not required to guide pro se litigants through the judicial system. Id. Even if the court were to consider [Williams's] claim of ineffective assistance of

6

counsel with respect to stand-by counsel, [Williams] presented no credible evidence to support this claim.

9.  [Williams's] remaining allegations regard issues which were known at the time of the original trial and which should have been raised on direct appeal. Consequently, they are not available for review in this post conviction proceeding. Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001). Moreover, even if [Williams's] allegations were considered on the merits, Michael Banik, former deputy prosecuting attorney, testified at the post conviction hearing that the parties entered into a stipulation that the substance being offered into evidence at trial was cocaine and the weight of that cocaine. *(Transcript, p. 22, ll 12-16).* Mr. Banik further testified that he handed the stipulation to stand by counsel and [Williams] at counsel table and it was signed by [Williams]. *(Tr., p. 38, ll 5-16).* No further evidence was admitted regarding [Williams's] contentions.

10. In order to prevail on a petition for post-conviction relief, a petitioner must establish by a preponderance of the evidence that he is entitled to the relief claimed. In this case, [Williams] has failed to satisfy this burden upon the facts of this case and upon the law applicable to the issues raised in his petition.

Id. at 14-15.

STANDARD OF REVIEW

Before discussing Williams's allegations of error, we note that although Williams is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. We also observe that the purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. Reed v. State, 856 N.E.2d 1189, 1194 (Ind. 2006). A post-conviction petition is not a substitute for an appeal. Id. Further, post-conviction proceedings do not afford a petitioner a "super-appeal." Id. The post-conviction rules

7

contemplate a narrow remedy for subsequent collateral challenges to convictions. Id. If an issue was known and available but not raised on appeal, it is waived. Id.

We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

ISSUES

I.

The first issue is whether Williams was deprived of a procedurally fair post-conviction hearing. Williams appears to argue that the post-conviction court denied him the opportunity to offer supporting evidence. Williams points to the post-conviction

8

court's statement in its order that "No further evidence was admitted regarding [Williams's] contentions." Appellant's Appendix at 15. Williams points out that he filed a "closing argument by affidavit as well as a memorandum of law in support of his post conviction petition for post conviction relief," and argues that the post-conviction court "refused to recognize or consider them as evidence." Appellant's Brief at 40 (citation omitted). Williams also points out that he filed an "offer of proof for exclusion of witnesses" and an "offer of proof for unavailable witness." Id. at 41. Further, Williams alleges that the "trial court mischaracterized direct testimony of State's witnesses as well as claims of impartiality." Id. at 47.

The State argues that the legal contentions and conclusions in the "Closing Argument by Affidavit" and "Affidavit Offer of Proof for Exclusion of Witnesses" are not evidence and that the post-conviction court was not required to regard them as proof of any fact. Appellee's Brief at 25. In other words, the State argues that the post-conviction court "simply and properly did not consider Williams' arguments to be evidence." Id.

Williams does not cite to a specific portion of the documents that he filed with the post-conviction court or develop an argument that he suffered any prejudice. Consequently, this issue is waived. See, e.g., Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

9

Williams also appears to argue that the post-conviction court abused its discretion in refusing to issue subpoenas without providing a reason for the refusal. The State argues that Williams's arguments were known and available on direct appeal and are not grounds for post-conviction relief, that the witnesses could not have provided relevant and probative testimony, and that the post-conviction court entered a finding on the record and ruled on each request for a subpoena.

Ind. Post-Conviction Rule 1(9)(b) provides that "[i]f the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony." The Rule also provides that "[i]f the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena." Ind. Post-Conviction Rule 1(9)(b).

As previously mentioned, Williams filed a motion for issuance of subpoenas on December 8, 2010, and the record does not contain a copy of this motion. At the January 13, 2011 hearing on the motion, the court explained to Williams why it refused to grant subpoenas with respect to several witnesses. For example, the court refused to grant a subpoena for Stephanie Burgess because she was no longer the clerk of the court and there were other ways to authenticate documents. The court also informed Williams that he would not allow Williams to relitigate the case. On March 21, 2011, Williams filed another motion for issuance of subpoenas in which Williams requested subpoenas for

approximately twenty people. Based upon the transcript from the January 13, 2011 hearing, it appears that some of the witnesses mentioned in Williams's March 21, 2011 motion were already addressed by the court at the January 13, 2011 hearing. Further, at the April 7, 2011 hearing, the court stated: "There is a big difference between allowing you to file an Amended Petition For Post-Conviction Relief and allowing you to cause the production of witnesses from all over the Department of Correction to establish something that does not bear upon any legitimate issue raised in these post-conviction proceedings." Transcript of April 7, 2011 Hearing at 46. We also observe that Williams does not specify on appeal which witness or witnesses the trial court failed to address in findings or otherwise. Williams also does not develop an argument that the court erred in refusing to grant a subpoena to any specific witness or witnesses. Under the circumstances, we cannot say that reversal is warranted on this basis.

## II.

The next issue is whether the court erred by denying Williams's motion to dismiss. Williams argues that the post-conviction court abused its discretion "by denying [his] motion to dismiss as it was statutory not discretionary." Appellant's Brief at 47. Williams's entire argument appears to be that his sentence should be vacated "as dictated by Statute I.C. 35-34-1-2(a)[3] as the charging information was defective pursuant to

---

[3] Ind. Code § 35-34-1-2(a) provides:

The indictment or information shall be in writing and allege the commission of an offense by:

(1)     stating the title of the action and the name of the court in which the indictment or information is filed;

11

statute IC. 35-34-1-6."[4]   Id. at 48.   The State argues that Williams's motion was an improper vehicle for litigating his post-conviction claims and that the claim was available on direct appeal and is not grounds for post-conviction relief.

(2)     stating the name of the offense in the words of the statute or any other words conveying the same meaning;

(3)     citing the statutory provision alleged to have been violated, except that any failure to include such a citation or any error in such a citation does not constitute grounds for reversal of a conviction where the defendant was not otherwise misled as to the nature of the charges against the defendant;

(4)     setting forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition;

(5)     stating the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense;

(6)     stating the time of the offense as definitely as can be done if time is of the essence of the offense;

(7)     stating the place of the offense with sufficient particularity to show that the offense was committed within the jurisdiction of the court where the charge is to be filed;

(8)     stating the place of the offense as definitely as can be done if the place is of the essence of the offense; and

(9)     stating the name of every defendant, if known, and if not known, by designating the defendant by any name or description by which he can be identified with reasonable certainty.

[4] Ind. Code § 35-34-1-6 provides:

(a)     An indictment or information is defective when:

(1)     it does not substantially conform to the requirements of section 2(a) of this chapter;

(2)     the allegations demonstrate that the court does not have jurisdiction of the offense charged; or

(3)     the statute defining the offense charged is unconstitutional or otherwise invalid.

12

Again, we cannot say that Williams has developed a cogent argument on appeal. Consequently, this issue is waived. See, e.g., Cooper, 854 N.E.2d at 834 n.1; Shane, 716 N.E.2d at 398 n.3. Further, we cannot say that reversal is warranted based upon the charging information and the statutes which Williams cites.

## III.

The next issue is whether the post-conviction court erred in denying Williams's petition for relief based upon his argument that the State improperly suppressed evidence. Williams argues that the State failed to disclose exculpatory evidence. He contends that the prosecutor failed to disclose "portions of a sound recording prior to State's key witness willfully destroying the material exculpatory evidence that could have affected the outcome of the trial . . . ." Appellant's Brief at 32.

The State argues that Williams's claim is based entirely on the record of his original trial that was available to him on direct appeal and is therefore not grounds for post-conviction relief. The State contends that even if Williams's claim was a cognizable

---

(b) An information is defective if:

  (1) the defendant was a grand jury target identified under IC 35-34-2-12(a)(1);

  (2) the offense alleged was identified on the record under IC 35-34-2-12(a)(2) as an offense that the defendant allegedly committed; and

  (3) the grand jury proceeded to deliberate on whether to issue an indictment, and voted not to indict the defendant for the offense identified on the record under IC 35-34-2-12(a)(2).

  However, if the prosecuting attorney shows that there is newly discovered material evidence that was not presented to the grand jury before the grand jury's failure to indict, then the information is not defective.

(c) Except as provided in section 5 of this chapter, an indictment or information or a count thereof shall be dismissed upon motion when it is defective.

ground for post-conviction relief, his assertions are not supported by the record because the complete recording was available. The State also argues that to the extent Williams's claims may be construed to assert that portions of events related to his drug dealing were not recorded at all, Williams did not present evidence to this effect at trial or at the post-conviction hearing.

In Brady v. Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-1197 (1963). "To prevail on a Brady claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." Minnick v. State, 698 N.E.2d 745, 755 (Ind. 1998) (citing Brady, 373 U.S. at 87, 83 S. Ct. 1194), reh'g denied, cert. denied, 528 U.S. 1006, 120 S. Ct. 501 (1999). A defendant must show that the State suppressed the evidence either willfully or inadvertently and that prejudice ensued. Skinner v. Switzer, 131 S. Ct. 1289, 1300 (2011). The State will not be found to have suppressed material information if that information was available to a defendant through the exercise of reasonable diligence. Conner v. State, 711 N.E.2d 1238, 1246 (Ind. 1999), reh'g denied, cert. denied, 531 U.S. 829, 121 S. Ct. 81 (2000).

"Evidence is 'material' only if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Minnick, 698 N.E.2d at 755 (quoting United States v. Bagley, 473 U.S. 667,

14

685, 105 S. Ct. 3375, 3385 (1985)).  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Bagley, 473 U.S. at 682, 105 S. Ct. at 3383. "Favorable evidence" includes both exculpatory evidence and impeachment evidence. See Skinner, 131 S. Ct. at 1300; Prewitt v. State, 819 N.E.2d 393, 401 (Ind. Ct. App. 2004), trans. denied.

The record reveals that Officer Anderson testified that State's Exhibits 3A and 3B consisted of the complete encounter from when Williams entered the vehicle until he exited the vehicle, and Williams indicated at trial that he listened to State's Exhibits 3A and 3B.  Based upon Officer Anderson's testimony, the State did not suppress evidence. To the extent that Williams appears to argue that a recording of the complete encounter was not provided by the State, we observe that Williams does not specify on appeal the contents of the audio recording he alleges was missing.  Based upon our review of the record, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

IV.

The next issue is whether Williams was denied the effective assistance of trial counsel.  Ordinarily a defendant who elects to proceed *pro se* with the assistance of standby counsel cannot subsequently claim that counsel was ineffective.  See Carter v. State, 512 N.E.2d 158, 163-164 (Ind. 1987).  In Carter, the Indiana Supreme Court observed that while the trial court chose to describe the defendant as "co-counsel," the facts showed that the defendant represented himself with the help of the public defender acting as a liberally defined "standby counsel."  Id. at 163.  The Court held that when a

15

defendant takes control of his own defense,[5] he waives his right to allege a Sixth Amendment violation with respect to standby counsel's adequacy. Id. The Court held:

> Accepting [the defendant's] allegation of ineffectiveness of counsel would distort the Sixth Amendment. He has attempted to take the benefits of his constitutional right to self-representation without accepting the burdens which are inherently attached. When he chose to circumscribe "the guiding hand of counsel" and navigate his own defense, [the defendant] voluntarily traveled into the murky waters outside the safe harbor of the Sixth Amendment and sank any claim of ineffective assistance of counsel.
>
> Practical considerations also support this conclusion. To allow [the defendant] to participate in his defense to such an extent and then to assert this claim would encourage conduct contrary to the tenets of our judicial system. One of the essential reasons for counsel is the orderly pursuit of justice, a[n] objective which is at risk whenever an accused plays the role of courtroom advocate. Defense efforts may be repetitious or contradictory when the defendant, as co-counsel, and his appointed attorney follow different legal routes. A particularly manipulative defendant might contravene his public defender's actions simply to create appealable error. Moreover, the law will not recognize errors which could have been remedied at the trial level. As co-counsel, [the defendant] had the duty to speak if counsel was inappropriately silent.

Id. at 164. The Court noted that its rejection of the defendant's ineffectiveness claim rested upon his own substantial control of the defense. Id. The Court also stated that "[h]ad counsel been a true advocate within the meaning of the Sixth Amendment, rather than a tool for implementing [the defendant's] self-representation, [the defendant] certainly would have been entitled to present this claim." Id.

The record reveals that Williams waived his right to an attorney and was appointed standby counsel. Williams examined witnesses, entered into stipulations, and

---

[5] The Court stated that the defendant "not only was actively participating in his own defense but effectively managing the activities of the public defender. This was not a situation in which the public defender listened to the advice of his client and then pursued independently the route which he believed, in his professional judgment, was most beneficial. [The defendant] defined the public defender's responsibilities and had the final say on all trial decisions." 512 N.E.2d at 164.

16

made arguments to the jury. Based upon the record, we conclude that Williams had substantial control of the defense. Thus, Williams waived his right to allege a Sixth Amendment violation with respect to counsel's adequacy.

To the extent that Williams suggests that at times his standby counsel was more than a tool for implementing Williams's self-representation, we will address his arguments. Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), reh'g denied), reh'g denied, cert. denied, 534 U.S. 830, 122 S. Ct. 73 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Perez v. State, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. French, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Morgan v. State, 755

17

N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986).

A.    Prosecutor's Plea Offer

Williams appears to argue that he was deprived his right to the effective assistance of counsel during critical stages of the proceedings because the prosecutor provided the plea offer to his standby counsel and not directly to him. Williams points to testimony from the prosecutor that he provided an offer to his standby counsel and that he assumed that his standby counsel conveyed it to Williams. The State argues that Williams is unable to assert that his right to effective representation was violated as a ground for post-conviction relief with respect to the plea offer or any other aspect of his case. The State also argues that even if Williams had a constitutional interest in plea bargaining, or even if delays in communication were cognizable as ineffective self-representation, Williams discussed a plea offer with the State prior to trial, and would therefore be unable to show prejudice requiring a new trial.

The record reveals that Williams was aware of an offer prior to trial. At the end of the January 25, 2007 hearing, Williams confirmed that he wanted to represent himself in the upcoming trial and the following exchange occurred:

18

| [Prosecutor]: | Just briefly, and given where we are today, on all matters, everything that's been said and heard, do you still want to go to trial on Monday or do you want any additional time? |
|---|---|
| [Williams]: | Yeah, but we can go on Monday. I mean the things that I am not going to be able to do to get in is not – but I don't have the documentation for the case or whatever, it's not going to make that much of a difference. |
| [Prosecutor]: | Well, I'm not asking – I'm asking that is it still your desire based on where we stand today with this case going forward as quickly as it is set on the Court's calendar, knowing everything you know today and understanding the posture of the case today? |
| [Williams]: | Yes. Get this over with. If I listen to those tapes, then I might change my mind; doubt it. |
| [Prosecutor]: | And you understand – |
| [Williams]: | That the offer that you offered – |
| [Prosecutor]: | Walking out of this courtroom today, there is no offer. Correct? |
| [Williams]: | Yes. |

January 25, 2007 Hearing Transcript at 54-55. Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

B.     Stipulation

Williams argues that "his Sixth Amendment right under the Confrontation Clause were [sic] violated because the State did not present the technician who ran the samples through the laboratory[']s equipment." Appellant's Brief at 27. Williams argues that he signed a stipulation "due to a wink and nod agreement between the State and standby

19

counsel in which [Williams] was forced into the arena to face armed gladiators that used the guiding hand of standby counsel to lead [Williams] from the safe harbor of his Sixth Amendment right to confrontation into murky waters." Id. at 29. Williams also argues that he signed a stipulation "only agreeing to contents not weight." Id. at 30. The State argues that to the extent that Williams's arguments can be read as a claim that his standby counsel was ineffective, such a claim is unavailable because Williams's defense was his own creation and not controlled by standby counsel.

The record reveals that there was a stipulation dated January 26, 2007, which mentioned only the identity of the cocaine and not the amount, and that the trial court referenced the stipulation and indicated that there was no agreement because there was no meeting of the minds. Following a recess, the parties provided a document signed by Williams that stated: "The parties stipulate and agree that the drugs contained in State's Exhibit 1 consist of 5.910 grams of crack cocaine. The Defendant waives the testimony of the lab personnel and accepts their written findings, State's Exhibit 4, into evidence." Trial Transcript at 222. The court asked Williams whether this was his agreement, and Williams responded: "Yes, it is." Id. The court then asked if the agreement was to be interpreted to mean that the lab report may be admitted into evidence without objection and displayed to the jury, and Williams stated: "That's correct." Id. Consequently, the record reveals that Williams agreed to the admission of the lab report. Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

## CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's denial of Williams's petition for post-conviction relief.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.