**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 22 2014, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRYAN M. TRUITT**
Bertig & Associates, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BENJAMIN WILLIS, II, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1401-CR-30 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
Cause No. 64D01-1203-FA-2648

**October 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Benjamin Willis, II, appeals his conviction and sentence for battery as a class A felony. Willis raises two issues, which we revise and restate as:

I.   Whether the evidence is sufficient to sustain his conviction; and

II.  Whether the court erred in sentencing him.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 8, 2012, Sasha Sabates was living in Willis's home with her young children R.O. and K.F, born August 17, 2011. At approximately 11:30 a.m., Sabates prepared a bath for her sons. During the bath, K.F. slipped and fell in the tub and hit his head on the faucet. After she bathed the boys, Sabates brought K.F. to his room and began to put him down for a nap. Sabates observed that K.F. was playing with toys and was saying mama prior to his nap. She thought that K.F. was acting "perfectly normal" at that time. Trial Transcript at 172. She prepared a bottle, and K.F. drank it and fell asleep midway through the feeding. She observed that K.F. fell asleep normally and was sleeping on the middle of a pillow in the crib. After K.F. had fallen asleep, Sabates took R.O. into the master bathroom with her while she took a shower. While Sabates was showering, Willis was in the master bedroom sleeping, and at one point Willis told Sabates that the dogs were barking.

Sabates exited the shower, wrapped herself in a towel, and went to the door to check on the dogs. She noticed that the dogs were outside and encountered Willis's mother, Sharon, who walked into the home and was looking for Willis. Sharon followed Sabates back to the bedroom. Sharon woke up Willis and discussed with him some custody issues

2

he was having with the mother of his daughter. Willis then took a shower, dressed, and left to buy soda and cigarettes at a nearby convenience store.

Once Willis returned home, Sharon decided to leave, and Sabates returned to the bathroom to apply makeup and "finish doing her hair." Id. at 187. At that point, Sabates was unsure if either Willis or Sharon was in the home. She looked at a clock in the master bedroom and noticed that it was about 2:00 p.m., which was the time K.F. normally woke from his naps, but "[she] didn't hear anything on the baby monitor." Id. at 188. Sabates was preparing another bottle when Willis came into the house and said he heard K.F. crying, although Sabates did not hear crying. Sabates stopped preparing the bottle, peeked into K.F.'s room to check on him and did not hear crying. After Sabates finished making the bottle, she returned to K.F.'s room to check on him again, and she "immediately noticed that he was more paler [sic] than usual. He had vomit everywhere. And [she] noticed that he was slightly pushed off [the pillow] more into the crib than usual." Id. at 191. Sabates observed that K.F.:

> wasn't [breathing.] [She] looked at him and he made like a, it was a real quick like, uh, uh, uh, like this (indicating). And his eyes were like slightly shut. And they were dilated. [She] immediately noticed something was wrong, because when [she] picked him up [] he just flopped.

Id. at 192. Sabates noticed that K.F.'s head was "all mush." Id. at 193. She stated that the "back of his head . . . was concaved, or it was curved outwards. And . . . there was no hardness in the back of his head, at all." Id. She ran outside where she found Willis picking up dog feces and told him to call 911. Willis called 911 from a neighbor's house. Detective Darryl Henson responded to the scene and observed that Willis's demeanor lacked emotion. Eventually, the ambulance arrived and took K.F. to Porter Hospital, and he was

later airlifted to Riley Hospital for Children in Indianapolis for more tests. When Willis was interviewed by the Detectives, he told them that while Sabates was showering and he was in bed he "rolled over and noticed that the monitor was lit up, and he heard [K.F.] fussing," that he let Sabates know and that Sabates said she would take care of K.F. after she finished her shower. Id. at 568. K.F. was pronounced dead on March 10, 2012, after two days in the hospital.

On March 16, 2012, the State charged Willis in a five count information with: Count I, neglect of a dependent as a class A felony; Count II, battery as a class A felony; Count III, battery as a class D felony; Count IV, torturing or mutilating a vertebrate animal as a class D felony; and Count V, cruelty to an animal as a class A misdemeanor. On February 4, 2013, the court severed Counts IV and V.[1] On November 12, 2013, the court commenced a jury trial on Counts I through III at which the State presented the testimony of, among others, Dr. Ralph A. Hicks, Sabates, Dr. Ken Obenson, Sharon, and Detective Eric Jones.

Dr. Hicks testified that his review of K.F.'s medical records indicated that K.F. fell into a faucet in the bathtub on the day in question but that "[his] understanding was [that K.F.] was sitting in the tub and then leaned or fell into the faucet, but . . . that would not have been, or provided sufficient force to cause the head injuries that he had" because "a baby who falls over from a sitting position in a bathtub is not going to fall with enough force to cause a life-threatening internal injury." Id. at 73-74. In concluding his direct

---

[1] The severed charges were related to Willis's treatment of his dogs and, potentially, another person's dog.

testimony, Dr. Hicks stated that "[he] fe[lt] that the injuries [K.F.] sustained were non-accidental, or abusive in nature. . . . [T]he pattern of injuries, the type of injuries were characteristic of abusive head trauma. There wasn't any history of anything from the medical evaluation to suggest any alternative explanation." Id. at 78-79.

Sabates testified to facts consistent with the foregoing, and, with respect to a slip or fall that occurred earlier that day while Sabates was bathing K.F., she stated:

> [She] ben[t] down to pick up the towel and [she] wrap[ped] it here and pull[ed] him out. And when [she] [went] to pull out [K.F.], he d[id] like a, he lean[ed] forward and then to the side. It wasn't, there was water still in the tub. He didn't hit anything. No crying. No nothing. So [she] pick[ed] him up and then [she] wrap[ped] him up in a towel and then [she] [went] to the boys' bedroom.

Id. at 166. Sabates also testified that she could not recall whether K.F. bumped his head or not. She also indicated that she did not drop K.F., that K.F. did not fall out of her arms, and that K.F. did not "squirm to get away." Id. at 169.

The State heard testimony from Dr. Ken Obenson, a forensic pathologist, who indicated that the cause of death was "[b]lunt force trauma to the head." Id. at 394. Dr. Obenson also testified that the manner of K.F.'s death was "[h]omicide." Id. Willis's mother, Sharon, testified during the trial to a version of the events leading up to the incident that was consistent with Sabates's description. Detective Jones, who spoke with both Sabates and Willis, also testified consistent with Sabates's testimony. Detective Jones indicated that the timeline Sabates provided for that day did not change during the investigation. He also interviewed Willis to verify Sabates's version of events, and the timeline provided by Willis was consistent with the one provided by Sabates.

On November 15, 2013, the jury found Willis guilty of Count I, neglect of a dependent as a class A felony, and Count II, battery as a class A felony, and not guilty of Count III, battery as a class D felony. On December 16, 2013, the court held a sentencing hearing. During the hearing, the State argued that the court should consider three aggravating factors: (1) the victim was under twelve; (2) Willis committed a crime of violence knowing that a person under eighteen was present; and (3) Willis was in a position of trust with respect to the victim. Willis's counsel argued that the first aggravator, age, was an element of the offense and should receive minimal weight. His counsel further argued that, as to the second aggravator, there was "no evidence whatsoever that this offense [was committed] in front of, in the presence of this other minor child." Sentencing Transcript at 40. Willis's counsel also stated that "the preparer of the pre-sentence report has failed to list any mitigators" and argued Willis had "no history or minimal history with regards to criminal activity." Id. at 41. His counsel explained that, as to other criminal activity, the charges involved "a pending matter in Lake County . . . that was . . . going to be dismissed." Id. at 41-42. He stated that because this conviction was Willis's "first conviction, including juvenile adjudications," his lack of prior criminal history should be a mitigator. Id. at 42. Counsel also argued that Willis's imprisonment would lead to hardship for his daughter and for his mother and should be considered as a mitigator. Counsel further argued that Willis's sentence should be suspended and argued that he be placed on probation.

After reviewing the presentence report, the court stated that even though "age [was] an element of the offense . . . the extremely young age of the victim" supported the court's

6

decision that age was an aggravator. Id. at 44. The court found the fact that Willis stood

in a position of trust with respect to the victim was an aggravator, but it did not give "strong

weight" to Willis having committed the crime in the presence of a person under age

eighteen. Id. As to the proposed mitigators, the court stated that "he doesn't have as much

a history of criminal activity as other defendants this court sees" but observed that the two

other counts under the charging information that had been severed for trial were "also

criminal activity." Id. at 44-45. As a result, the court stated that to find lack of criminal

history as a mitigator "would be incorrect and I do not find that." Id. at 45. As to support

of a dependent as a proposed mitigator, the court did not find that as a mitigator.

In the sentencing order, the court stated that "by law, the two (2) guilty verdicts be

merged" and it entered "judgment of conviction on Count II, Battery, Class A Felony."

Appellant's Appendix at 188. The order further stated:

> The Court finds as aggravating circumstances: 1) the extreme young age of
> the victim; and 2) that Defendant was in a position of trust. The Court finds
> no mitigating circumstances. The Court begins with the advisory sentence
> of thirty (30) years. The Court finds that the aggravating outweigh the
> mitigating circumstances and adds ten (10) years for a total sentence of forty
> (40) years in the Indiana Department of Correction. None of the sentence is
> suspended.

Id.

DISCUSSION

I.

The first issue is whether the evidence is sufficient to sustain Willis's conviction for

battery as a class A felony. When reviewing claims of insufficiency of the evidence, we

do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656

7

N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

Willis contends that the incredible dubiosity rule applies and that reversal is warranted on that basis. In Willis's Summary of the Argument section of his brief, he makes the following assertions without citation to the record or authority: "there are severe problems with Sabates's testimony. She is inconsistent with her statements to the police. She is inconsistent with her confidences in friends. Her account violates any concept of common sense. Her testimony is simply incredibly dubious." Appellant's Brief at 6. Willis asserts that "[e]ven should this Court reject the obvious dubiosity of [Sabates's] testimony, the State's theory does not meet common sense" and that "there is still reasonable doubt as to [his] guilt, under any standard of review." Id. In the Argument section of the brief, however, beyond discussing the standard of review applicable to insufficiency of the evidence and boilerplate statements of law regarding the incredible dubiosity rule, the brief contains merely the heading "SABATES [sic] TESTIMONY WAS INCREDIBLY DUBIOUS" followed by a single sentence: "In this case, the only recount of the events on March 7-8, 2012 come [sic] from the testimony of Sabates." Id. at 8. Willis does not develop a cogent argument or cite to the record, and accordingly this issue is waived. See Johnson v. State, 675 N.E.2d 678, 681 n.1 (Ind. 1996) (observing that the defendant failed to cite to the record and "[o]n review, this Court will not search the record to find grounds for reversal"); Keller v. State, 549 N.E.2d 372, 373 (Ind. 1990) (holding

8

that a court which must search the record and make up its own arguments because a party has presented them in perfunctory form runs the risk of being an advocate rather than an adjudicator); see also Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument); Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.").

Waiver notwithstanding, we note that the incredible dubiosity rule applies only in very narrow circumstances. See Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Id. The function of weighing witness credibility lies with the trier of fact, not this court. Whited v. State, 645 N.E.2d 1138, 1141 (Ind. Ct. App. 1995). Moreover, conflicts in pretrial statements and trial testimony do not make a witness's trial testimony incredibly dubious. See Murray v. State, 761 N.E.2d 406, 409 (Ind. 2002).

9

During her testimony, Sabates provided a timeline and her observations of the day's events, which included waking and feeding her children, bathing them, putting K.F. down for a nap, and taking a shower while Willis slept. Willis's counsel cross-examined Sabates at length about her observations regarding what occurred on the day of the incident and the timeline of events, and called a witness who provided a different version of events from that of Sabates. In addition, we note that Sabates's testimony was not wholly uncorroborated and there was not a complete lack of circumstantial evidence in this case. As noted, the State presented the testimony of Willis's mother and Detective Jones, and the State also presented evidence of K.F.'s injuries and expert testimony regarding the cause of those injuries. Moreover, to the extent the testimony of Sabates was inconsistent or conflicted with the testimony of other witnesses, the function of weighing witness credibility lies with the jury as trier of fact, and the jury could determine whose testimony was believable. See Whited, 645 N.E.2d at 1141. Willis does not show how Sabates's testimony was incredibly dubious.

We cannot say that the testimony of Sabates regarding the timeline of events and her observations was so inherently improbable that no reasonable person could believe it, as Willis argues. Willis fails to point to any specific testimony of Sabates showing that her testimony was somehow inherently inconsistent and has not shown that Sabates's testimony was incredibly dubious. Based upon our review of the evidence and testimony most favorable to the conviction as set forth in the record and above, we conclude that sufficient evidence exists from which the trier of fact could find Willis guilty beyond a reasonable doubt of battery as a class A felony.

10

The next issue is whether the court erred in sentencing Willis. We observe that Willis titles the applicable section of his brief as "Inappropriate Sentence," and cites to Ind. Appellate Rule 7(B), which provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Willis does not address either prong. Rather, the substance of his argument concerns the court's failure to identify his lack of criminal history as a mitigator which this court addresses under an abuse of discretion in sentencing standard, which, as we have repeatedly explained, is analyzed separately from the issue of whether a defendant's sentence is inappropriate. See, e.g., King v. State, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008) (observing that "an inappropriate sentence analysis does not involve an argument that the trial court abused its discretion in sentencing the defendant"). Willis's argument that his sentence is inappropriate is waived. See Williams v. State, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008); Ind. Appellate Rule 46(A)(8)(a); see also Cooper, 854 N.E.2d at 834 n.1; Shane, 716 N.E.2d at 398 n.3; Smith v. State, 822 N.E.2d 193, 202-203 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), trans. denied.

To the extent Willis argues that the court failed to find his lack of a criminal history as a mitigator, we note that sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868

N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Id. at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. The determination of mitigating circumstances is within the discretion of the trial court. Rogers v. State, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), trans. denied. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. Id.

To the extent that Willis suggests the trial court used his criminal history as an aggravator, we observe that the court did not list his criminal history as an aggravator. The court heard argument from Willis's counsel on the issue of aggravators and mitigators and concluded that Willis had a criminal history but no convictions. The record reveals that Willis had pending misdemeanor charges of intimidation and harassment outstanding in Lake County, as well as the severed counts initially charged, which the court referenced when it declined to find his lack of criminal history as a mitigator. We cannot say that the trial court abused its discretion when it found that Willis's lack of criminal history was not

12

a mitigating circumstance. See Stark v. State, 489 N.E.2d 43, 48 (Ind. 1986) (noting that "[i]t is proper for a sentencing court to consider evidence of prior criminal conduct not reduced to convictions as part of a defendant's criminal history"); Williams v. State, 997 N.E.2d 1154, 1163-1164 (Ind. Ct. App. 2013) (observing that a trial court does not have to explain why it does not find that a factor is a mitigating circumstance).

Based upon the evidence presented at the sentencing hearing, we conclude that the trial court did not abuse its discretion when it found that Willis's lack of criminal history was not a mitigating circumstance.

CONCLUSION

For the foregoing reasons, we affirm Willis's conviction and sentence for battery as a class A felony.

Affirmed.

BARNES, J., and BRADFORD, J., concur.