## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Thomas J. Gaunt
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John D. Quarles, <br> *Appellant-Petitioner*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent*. | December 23, 2015 <br><br> Court of Appeals Case No. <br> 49A02-1503-PC-152 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Steven R. Eichholtz, Judge <br><br> The Honorable Peggy Ryan Hart, Master Commissioner <br><br> Trial Court Cause No. <br> 49G23-0803-PC-58309 |

**Brown, Judge.**

[1] John D. Quarles appeals the denial of his petition for post-conviction relief. Quarles raises one issue which we revise and restate as whether the post-conviction court erred in denying his petition for relief. We affirm.

## Facts and Procedural History

[2] On March 13, 2008, the State charged Quarles with Count I, dealing in cocaine as a class A felony; Count II, possession of cocaine and a firearm as a class C felony; Count III, possession of cocaine as a class C felony; Count IV, possession of marijuana as a class A misdemeanor; and Count V, resisting law enforcement as a class A misdemeanor.

[3] The court scheduled a jury trial for September 1, 2009. On that day Quarles engaged in a discussion with the court regarding the charging information and stated: "On a plea bargain, you was – was going to give me for the thirty (30) years, it don't say that, neither, it just says Count I Dealing, Class A Felony." Petitioner's Exhibit 2 at 5. The following exchange occurred:

> THE COURT: Okay. All right. Well, you understand, we're set for jury trial today, okay? And we have a lot of people, I believe, downstairs ready and willing to come up here. People of your community, sir, okay? And there's going to be twelve (12) people chosen by the State and your attorney to sit in that box where you're sitting in (sic) right now and listen to the evidence and determine whether you're guilty or not guilty, okay? That's all they're going to do, and it has to be a unanimous verdict, okay? And then if the Court accepts the verdict, if it's a unanimous verdict, I will - - - I will accept it, and whatever that is, then I'm going to enter judgment of conviction and then we come back for sentencing, okay? So the lead classification of

Count I, I believe the classification of Count I is a Class A Felony, correct?

[Prosecutor]: Yes, Your Honor.

THE COURT: Okay. So that's worse case scenario, is Count I, A Felony. Do you understand that?

[Quarles]: Yes, ma'am.

THE COURT: Okay. And, so I understand that the State – there was an offer and because there's five (5) counts and technically I can run some of them consecutive, so worse case scenario I believe he's looking at fifty (50) plus years?

[Defense Counsel]: I have advised him that there's a pretty good double jeopardy argument that probably –

THE COURT: With regard to Count –

[Defense Counsel]: – probably would all be concurrent by law and merge but –

THE COURT: Well, what about – what about the marijuana and the resist?

[Defense Counsel]: That's – I (inaudible) –

[Prosecutor]: Fifty-two (52), fifty-two (52) is what's at stake.

THE COURT: Okay. I think – I think – I think that would be probably be safe to advise him, his worse case scenario would be

fifty-two (52) because I think he could probably have – you're right I think the –

[Defense Counsel]: Most would merge.

THE COURT: – the possession of cocaine could merge, and the gun and the cocaine, –

[Defense Counsel]: Can't do both, right.

THE COURT: – because that's a count that could merge, so I think worse case scenario is if you go to trial and you're convicted of all counts is that you'd be facing fifty-two (52) years. That would be worse case scenario. Do you understand that?

[Quarles]: Yes, ma'am.

THE COURT: Okay, and I know there was some negotiations, right? Were you thinking of trying to resolve this short of a jury trial?

[Quarles]: No, ma'am. No, ma'am. I wanted to resolve it with the A gone, I would resolve it because I'm not a dealer.

THE COURT: Okay.

[Quarles]: I'm a user.

THE COURT: Okay. So you were looking for, I don't know, a B? Is that it? Okay.

> [Defense Counsel]: I suppose if the agreement was offered, he would seriously consider it, but, you know, I don't think that's going to happen.
>
> [Prosecutor]: Right.

*Id.* at 6-9.

After further discussion, Quarles indicated that he was intending to smoke the cocaine and when asked by the court if he was intending to smoke all of it, Quarles stated: "Partying and smoking with it." *Id.* at 10. Quarles's counsel told Quarles that anything he said could not be used against him today because they were talking about possible negotiations. After further discussion, the court stated: "So, all I say to you is that – and I think [defense counsel] would agree with me, partying with other people could implicate [the] legal definition [of delivery], okay? So where – where are we at? Would you still go – if he plead guilty to Count I, would you dismiss everything else?" *Id.* at 11-12. The prosecutor indicated that the State would dismiss the other counts except for the charge of resisting law enforcement which it would agree to run concurrent with Count I. *Id.* at 12.

The following exchange then occurred:

> [Defense Counsel]: And I know the Court is oftentimes very appreciative and tends to mitigate if people take responsibility, even if they have criminal histories, but – and I've explained that to you, right John? The Judge may want to back me up, but –

> THE COURT: Oh, absolutely. You're absolutely correct [defense counsel]. You've been – you've been with me before many times. Many, many, many a time, so absolutely, sir. So what he's saying to you is that if you do plead guilty, I find that as a mitigating circumstance that you've taken responsibility.

*Id.* After further discussion, the court stated: "[U]ltimately the decision is yours, so, you know, you can either admit your guilt and we can go open, all right, or we can go to a jury trial, and you – I'm – I'm fully confident that you are aware of the circumstances and the consequences that that entails, right?" *Id.* at 14. Quarles responded affirmatively and asked to speak with his attorney. The court took a recess, and then defense counsel stated that Quarles was interested in pleading blind to the court on a class A felony if the State agreed to dismiss all other charges except the charge of resisting law enforcement as a class A misdemeanor with the agreement that any sentence would run concurrent with Count I. When questioned by the court, Quarles indicated that he wished to plead guilty.

[6] After another recess for the prosecutor to complete some paperwork, Quarles indicated that he intended to plead guilty to Counts I and V. The court indicated that the sentence on a class A felony "is anywhere from twenty (20) to fifty (50) years," and Quarles indicated that he understood. *Id.* at 19. The court informed Quarles that he was giving up his rights to a public and speedy trial by jury, to cross-examine and confront witnesses, to remain silent, to require the State to prove his guilt beyond a reasonable doubt, and to appeal his conviction, and Quarles indicated that he understood.

The prosecutor then stated that on or about March 12, 2008, Quarles did knowingly possess with the intent to deliver cocaine in an amount greater than three (3) grams and he either intended to give or sell the cocaine to another person. He also stated that Quarles knowingly obstructed and interfered with a law enforcement officer while the officer was executing his official duties. Quarles indicated that the prosecutor's statements were true.

The following exchange then occurred:

> THE COURT: . . . Sir, did anybody threaten you or coerce you or force you plead [sic] guilty?
>
> [Quarles]: No, ma'am.
>
> THE COURT: Are you doing it knowingly, intelligently, and of your own free will?
>
> [Quarles]: Yes, ma'am.
>
> THE COURT: And are you doing it of clear and sound mind?
>
> [Quarles]: Yes, ma'am.
>
> \* \* \* \* \*
>
> THE COURT: And you think by pleading guilty, which you just did, to Dealing in Cocaine with the Intent to Deliver and Resisting Law Enforcement is in your best interest?
>
> [Quarles]: Yes, ma'am.

*Id.* at 31-32. Quarles also indicated that he was satisfied with defense counsel's performance, his advice, and how he answered his questions. The court then accepted Quarles's guilty plea. The State moved to dismiss Counts II, III, and IV, and the court granted the motion.

[9] On October 5, 2009, the court found Quarles's guilty plea and acceptance of responsibility as mitigators and his criminal history and violation of pre-trial conditions as aggravators. The court found that the mitigators outweighed the aggravators and sentenced Quarles to twenty-five years for Count I, dealing in cocaine as a class A felony, with twenty-three years executed at the Department of Correction and two years executed at the Marion County Community Corrections, and one year for Count V, resisting law enforcement as a class A misdemeanor. The court ordered that the sentences run concurrent with each other.

[10] Quarles sought a belated appeal, and this court dismissed Quarles's direct appeal with prejudice in 2011.

[11] On December 19, 2013, Quarles filed a *pro se* petition for post-conviction relief. In part, Quarles alleged that the trial court induced the plea by an improper threat by advising him that whether the jury found him guilty or innocent, the court would enter a judgment of conviction and mentioned that he was facing a sentence of fifty-two years and that he would probably be sentenced to the

maximum sentence.  He also alleged that he received ineffective assistance of counsel.[1]

[12] On October 3, 2014, the post-conviction court held a hearing.  At the hearing, Quarles testified that he went to "about the eleventh grade" in school, that he was in special education in school, and that he was expecting a jury trial on September 1, 2009.  Transcript at 13.  When asked what happened instead of a jury trial, Quarles stated: "Pleaded guilty, mostly plead like – a bunch of talking was going on, and if I hadn't of did this, if hadn't uh plead guilty – I had INDISCERNIBLE jury trial, I was going to get found guilty anyway, so I took a plea."  *Id.*  He also testified that "there wasn't no point of going, I was going to get found guilty, get fifty years anyway."  *Id.* at 14.  He testified that he heard the trial court say "fifty-two years" a few times.  *Id.*  He also testified that he did not think he was guilty and that was why he wanted a trial.

[13] Quarles's trial counsel testified that he remembered September 1, 2009, but did not recognize the exchange in the transcript in which the trial court told Quarles that "if the Court accepts the verdict, if it's a unanimous verdict, I will - - - I will accept it, and whatever that is, then I'm going to enter judgment of conviction . . . ."  Petitioner's Exhibit 2 at 6.  When asked if there was anything "alarming

---

[1] At the October 3, 2014 post-conviction hearing, Quarles's post-conviction counsel stated that he filed an amendment to the petition alleging that trial counsel was ineffective for failing to object to the trial court's statements at the guilty plea hearing.  The court indicated that it was filed September 16th.  Quarles's appendix contains only the petition filed on December 19, 2013.

in terms of something you might of [sic] objected to if you had heard it," Quarles's trial counsel answered affirmatively and stated:

> Well obviously, uh whether it's uh, someone misspeaking, or misinterpreting the fact that a ju – uh the bench would say, that they're going to enter judgment of conviction no matter what the verdict is. I mean that's obviously, um not accurate, but I'm guessing, uh someone either misspoke or miss – misheard, there's no way a judicial officer would say something like that, and mean it, if that's in fact what was said.

Transcript at 21. He testified that he did not know why he might not have objected. He also agreed that it might be fair to say that he probably did not hear it or did not catch it. On cross-examination, trial counsel testified that he was in the trial judge's courtroom numerous times per week and observed the trial judge when she was dealing with cases other than those on which he was working. When asked whether he ever knew the judge to threaten a defendant from the bench in such a way to suggest that she would find a defendant guilty even if a jury found a defendant innocent, trial counsel answered: "Absolutely not." *Id.* at 24.

[14]     On redirect examination of trial counsel, the following exchange occurred:

> Q  Your testimony if I recall, is that you believe in reading the transcript that there was an error, a misstatement, or mistaken statement by the court; correct?
>
> A  Either that, or the transcript was done wrong. I can't imagine a judge saying something like that, without it being a mistake, if in fact it was said.

Q  Uh, see you're inclined to think it's more an issue of whether there was a mistake in the transcript?

A  No, I didn't say that, that's one of the options.

*Id.* at 25.  When asked what he heard, trial counsel answered: "I INDISCERNIBLE back at the plea hearing I never heard [the trial judge] threaten that way, no." *Id.* at 26.

On December 12, 2014, the post-conviction court denied Quarles's petition for relief.  The order states in part:

### *INEFFECTIVE ASSISTANCE OF COUNSEL*

* * * * *

Regarding the threat of the trial court judge to convict [Quarles] after a trial even if a jury acquitted him, [Quarles's trial counsel] said that he did not hear the judge say it, nor had he ever on previous occasions heard the judge threaten a criminal defendant in a similar manner and, further, he would have been surprised to hear anyone suggest that she would do so.

* * * * *

Regarding the trial court's alleged threat against [Quarles] (discussed in more detail below), the Court finds that [trial counsel's] failure to hear the judge's comment was an isolated mistake and does not rise to the level of ineffectiveness.

[Quarles] has failed to meet his burden of proof in showing that [trial counsel's] representation fell below an objective standard of

reasonableness and that his error was so serious that it resulted in a denial of the right to counsel guaranteed under the Sixth Amendment of the United States Constitution. The Petition is denied upon the first prong of *Strickland*[*v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*], that of ineffectiveness. [Quarles] has not shown that he received a more severe sentence from the trial court judge as the result of anything [trial counsel] said at the guilty plea hearing, nor has he convinced the Court that he would have elected to go to trial (discussed further below) if [trial counsel] had questioned the trial court's language regarding the alleged threat, and so the Petition is denied upon the second prong of *Strickland*, that of prejudice.

### *INVOLUNTARY PLEA*

[Quarles] claims that his plea was involuntary because:

> The Court induced the plea by an improper threat, to wit: the Court advised [Quarles] that whether the Jury Trial found him guilty or innocent, the Court would enter a judgment of conviction . . .

* * * * *

No one present in the courtroom commented on the judge's slip of the tongue, for that is what it surely must have been. [Quarles] did not say anything. Nor did [his trial counsel]. Nor did the deputy prosecutor who immediately answered the judge's question about the classification of Count I.

At the evidentiary hearing, [Quarles] testified that he had been planning to go forward with trial until the moment the judge said she was going to find him guilty no matter what the jury found. However, the Court finds little evidence in the transcript of the

guilty plea hearing to back up this part of his claim.  On page 8 of the guilty plea hearing transcript, the following colloquy took place:

> THE COURT:  Okay, and I know there was (sic) some negotiations, right?  Were you thinking of trying to resolve this short of a jury trial?

> [Quarles]:  No, ma'am.  No, ma'am.  I wanted to resolve it with the A gone, I would resolve it because I'm not a dealer.

From this Court [sic] infers that there had been negotiations for a guilty plea offer that might have reduced the A felony count to a B felony, so [Quarles's] desire to go to trial was not as strong as he now makes it out to have been.  [Quarles's] response to the Court's question with, "No, Ma'am.  No, Ma'am." could be taken literally to mean that he did not wish to resolve the case short of a trial, but it could also be taken to mean generally that he did not wish to have a trial if he could get a deal that he liked.  However, even if the Court were inclined to give greater weight to a literal interpretation – that [Quarles] did not want to resolve the case short of a trial – the Court notes that proceedings were interrupted twice, to allow [Quarles] to confer with [trial counsel] over further negotiations, and then to allow the State some time to draw up a new plea document.  During both of these breaks, there was ample opportunity for [Quarles] to speak to [trial counsel] about the judge's apparent comment regarding a conviction following a jury acquittal.  Both times, when the trial court reconvened there was considerable discussion about the ongoing negotiations with the State and explanations from the trial court judge regarding the possible range of prison sentences, but there was not one word from anyone about the possibility of a judge-nullification of a jury acquittal at trial.

From a consideration of the entire transcript of the guilty plea hearing, the Court finds that in all probability [Quarles] completely missed the judge's misstatement, just as the prosecutor and [trial counsel] had, and it is only now, after having an opportunity to review the printed transcript of the guilty plea hearing, does [Quarles] make his claim that he was on the cusp of going to trial until the moment that the judge told him that his trial would be a sham. . . .

The Court now finds that [Quarles] has failed to meet his burden of proof in showing that, more likely than not, he heard the judge's comment about a conviction notwithstanding a jury acquittal. [Quarles] has also failed to show that he had been determined to go to trial until the judge made her comment, given the evidence that he had been engaged in negotiating a plea agreement prior to the guilty plea hearing. His claim that he was prejudiced by the judge's comment (if he had heard it) is unconvincing.

The Petition is denied as to his claim of involuntary plea.

Appellant's Appendix at 19, 22-26. On January 12, 2015, Quarles filed a motion to correct error. On February 11, 2015, the court denied the motion.

## *Discussion*

The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). A post-conviction petition is not a substitute for an appeal. *Id.* Further, post-conviction proceedings do not afford a petitioner a "super-appeal." *Id.* The post-conviction rules contemplate a

narrow remedy for subsequent collateral challenges to convictions. *Id.* If an issue was known and available but not raised on appeal, it is waived. *Id.*

[17] We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[18] Quarles argues that fundamental error occurred in the comments of the trial court inducing him to waive his jury trial and plead guilty. In the argument section of his brief, he does not specifically point to any of the trial court's

statements. However, elsewhere in his brief, he focuses on the trial court's following statement:

> And there's going to be twelve (12) people chosen by the State and your attorney to sit in that box where you're sitting in (sic) right now and listen to the evidence and determine whether you're guilty or not guilty, okay? That's all they're going to do, and it has to be a unanimous verdict, okay? And then if the Court accepts the verdict, if it's a unanimous verdict, I will - - - I will accept it, *and whatever that is, then I'm going to enter judgment of conviction and then we come back for sentencing*, okay?

Petitioner's Exhibit 2 at 6 (emphasis added). He argues that the trial court "participated in an over-involved restaging of plea negotiations on the record, and focused entirely seemingly on the maximum sentence that could be given by the Court . . . ." Appellant's Brief at 11. He also argues that his trial counsel was ineffective in failing to hear the comments of the court, object to the court's comments, and advise him accordingly, and in allowing the court to overreach in participating in the plea negotiations.

The State contends that Quarles has waived his claims on appeal because he fails to make a single cogent argument that is supported by authority or citations to the record, and that, waiver notwithstanding, his freestanding claim of fundamental error is not cognizable in post-conviction proceedings. The State argues that the post-conviction court properly addressed his claim that his

plea was not voluntary,[2] concluding that the plea was voluntarily given. It asserts that no one present in the courtroom commented on the trial court's misstatement, it can be inferred that no one heard the misstatement, Quarles never stated that he heard or understood the trial court's misstatement, and he failed to show that the statement induced him to plead guilty. It also maintains that Quarles's trial counsel was not ineffective.

[20] To the extent that Quarles fails to cite to the record or develop a cogent argument, including his argument that the trial court participated in an "over-involved restaging of plea negotiations on the record," Appellant's Brief at 11, we conclude that such arguments are waived. *See Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v. State*, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument); *Smith v. State*, 822 N.E.2d 193, 202-203 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*. To the extent that Quarles's brief cites to the record

---

[2] The State notes that "[r]ather than contending that fundamental error occurred, in his petition for post-conviction relief, [Quarles] argued that his plea was not voluntary, and the trial court properly interpreted and addressed the claim as it was presented." Appellee's Brief at 12.

elsewhere or develops a cogent argument, we will attempt to address his arguments.

[21] With respect to the voluntariness of his guilty plea, the Indiana Supreme Court has held that a plea entered after the trial judge has reviewed the various rights which a defendant is waiving and made the inquiries called for by statute is unlikely to be found wanting in a collateral attack. *State v. Moore*, 678 N.E.2d 1258, 1265 (Ind. 1997), *reh'g denied*, *cert. denied*, 523 U.S. 1079 (1998). However, defendants who can show that they were coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present colorable claims for relief. *Id.* at 1266. In assessing the voluntariness of the plea, we review all the evidence before the court which heard his post-conviction petition, including testimony given at the post-conviction hearing, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record. *Id.* In *Moore*, the Court held that "[v]oluntariness is also distinct from ineffective assistance of counsel, despite some references in our cases to pleas as involuntary" and that voluntariness "focuses on whether the defendant knowingly and freely entered the plea, in contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice." *Id.*

[22] As for Quarles's ineffective assistance claim, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[23] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the

time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

[24]     The Indiana Supreme Court categorized two main types of ineffective assistance of counsel cases in *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). The first category relates to "an unutilized defense or failure to mitigate a penalty." *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003), *trans. denied*. The second relates to "an improper advisement of penal consequences," and this category has two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure;" or (2) "claims of incorrect advice as to the law." *Id.* With respect to this category, the Court in *Segura* concluded:

> [I]n order to state a claim for postconviction relief a petitioner may not simply allege that a plea would not have been entered. Nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. To state a claim of prejudice from counsel's omission or misdescription of penal consequences that attaches to both a plea and a conviction at trial, the petitioner must allege, in *Hill's* terms, "special circumstances,"[3] or, as others have put it, "objective facts"[4] supporting the conclusion that the decision to plead was driven by the erroneous advice.

---

[3] *Hill* [v. Lockhart, 474 U.S. 52, 60, 106 S. Ct. 366 (1985)].

[4] *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir.1996); *State v. Donald*, 198 Ariz. 406, 10 P.3d 1193, 1201 (Ct. App. 2000)[, *review denied*, *cert. denied*, 534 U.S. 825, 122 S. Ct. 63 (2001)].

We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised. Nevertheless, . . . a petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*[ *v. Lockhart*, 474 U.S. 52,] 59, 106 S. Ct. 366 [(1985)].

*Segura*, 749 N.E.2d at 507. The Court also held:

Whether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the postconviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Id.* at 504-505.

[25] We conclude that the trial court's statement that "if the Court accepts the verdict, if it's a unanimous verdict, I will - - - I will accept it, and whatever that is, then I'm going to enter judgment of conviction" was improper. Petitioner's Exhibit 2 at 6. Nonetheless, we cannot say that reversal is warranted. With respect to this statement, trial counsel testified that it might be fair to say that he probably did not hear it or did not catch it. Trial counsel also stated that one of

the options was that the transcript was wrong and that he never heard the trial court judge threaten Quarles in the way suggested by post-conviction counsel.

[26] Further, at the guilty plea hearing, the trial court later stated: "[U]ltimately the decision is yours, so, you know, you can either admit your guilt and we can go open, all right, or we can go to a jury trial . . . ." *Id.* at 14. Later during that hearing and upon questioning by the court, Quarles indicated that no one threatened him or coerced him to plead guilty and that he was doing so knowingly, intelligently, and of his own free will.

[27] The trial court took two recesses during the September 1, 2009 hearing, and Quarles did not set forth any evidence regarding what he discussed with trial counsel during those recesses. Quarles did not testify or allege that he expressed any concern to his trial counsel regarding the trial court's advisement. He does not argue that any statements by his trial counsel were erroneous or material to his decision to plead guilty. At the September 1, 2009 hearing, Quarles indicated that he was satisfied with trial counsel's performance, his advice, and how he answered his questions.

[28] To the extent that Quarles asserts that the trial court improperly emphasized the maximum sentence, we observe that the court informed him that the "*worse* [sic] *case scenario* is if you go to trial and you're convicted of all counts is that you'd be facing fifty-two (52) years. That would be *worse case* [sic] *scenario*." *Id.* at 8 (emphases added). The court later indicated that the sentence on a class A

felony "is anywhere from twenty (20) to fifty (50) years," and Quarles indicated that he understood. *Id.* at 19.

[29] Based upon the record, we cannot say that Quarles demonstrated that he was coerced or misled into pleading guilty by the trial court, that any statement or failure on the part of his trial counsel was material to Quarles's decision to plead guilty, or that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

## *Conclusion*

[30] For the foregoing reasons, we affirm the post-conviction court's denial of Quarles's petition for post-conviction relief.

[31] Affirmed.

Kirsch, J., and Mathias, J., concur.